WILLIAM CASTLEBERRY, Respondent, et al., Plaintiffs, v HUDSON VALLEY ASPHALT CORP., Defendant; UTICA MUTUAL INSURANCE COMPANY, Appellant.

Second Department, September 28, 1979

APPEARANCES OF COUNSEL

*Alfred Schleider (Edgar T. Schleider* of counsel), for appellant.

*Finkelstein, Mauriello, Kaplan & Levine, P. C. (Howard S. Finkelstein* on the brief), for respondent.

## OPINION OF THE COURT

MARGETT, J.

This case raises a novel issue as to the proper standards to be applied in apportioning attorneys' fees, pursuant to subdivision 1 of section 29 of the Workers' Compensation Law, upon a third-party recovery by an injured employee. Stripped to its essentials, the question is whether the compensation insurance carrier should ordinarily contribute only in proportion to its actual benefit derived from the recovery (i.e., the satisfaction of its lien) or whether attorneys' fees should be assessed against it not only for the "collection" of its lien but also upon the theory that the employee's portion of the recovery inures

to its benefit by diminishing or extinguishing its liability for future payments to the employee.

In 1973 William Castleberry (hereinafter plaintiff) was injured in the course of his employment. From November of that year until the settlement of his third-party tort action in October, 1978, his employer's compensation carrier, Utica Mutual Insurance Company, made payments to him totaling more than $20,000. Plaintiff neither obtained the consent of Utica Mutual to his $75,000 settlement, nor sought a compromise order pursuant to subdivision 5 of section 29 of the Workers' Compensation Law.

Instead of proceeding by either of those two "conventional" routes, plaintiff went to Special Term with his *fait accompli* of a settlement,[1] and sought instead to have Utica Mutual's *entire* lien extinguished on the theory that the full amount of the settlement inured to the carrier's benefit and that, therefore, all the attorneys' fees should be apportioned against Utica. Special Term agreed and apportioned 100% of the attorneys' fees against the carrier. The reasonable attorneys' fees were found to be $25,000. Nevertheless, notwithstanding its apportionment, Special Term limited Utica's contribution to the amount of its lien—$20,402. In effect, the carrier's lien was compromised *in toto* under the guise of an apportionment of attorneys' fees.

██ Such a result is repugnant to both the scheme of the Workers' Compensation Law as a whole, and the legislative purpose of the equitable apportionment of attorneys' fees found in subdivision 1 of section 29. Indeed, the result reached by Special Term and indorsed by the minority view of this court fails to appreciate the "inviolability of the lien given to a workmen's compensation carrier against *any recovery* by a

---

1. Although the minority opinion has termed the settlement contingent, one must assume, in light of the wording of the statute, that a *recovery*—i.e., a final settlement —had been obtained since no application for an equitable apportionment of attorneys' fees may be brought until such time as a "recovery" has been obtained. The relevant wording of the statute is as follows: *"Should the employee * * * secure a recovery* from such other, whether by judgment, settlement or otherwise, such employee * * * may apply * * * to the court in which the third party action was instituted * * * for an order apportioning the reasonable and necessary expenditures, including attorneys' fees, incurred in effecting such recovery. Such expenditures shall be equitably apportioned by the court between the employee * * * and the lienor" (Workers' Compensation Law, § 29, subd 1; emphasis supplied). Furthermore, this court has ascertained from plaintiff's attorney that the third-party settlement has been finalized.

compensation claimant in a third-party action" (see *Matter of Granger v Urda,* 44 NY2d 91, 96). The statutory and constitutional significance of that lien was thoroughly discussed by the Court of Appeals in *Matter of Granger v Urda (supra,* pp 96-98):

"In essence, subdivision 1 of section 29 of the Workmen's Compensation Law provides that if the claimant elects to pursue his common-law remedies against a third-party tortfeasor for damages on account of an injury for which workmen's compensation benefits were paid, the compensation carrier shall have a lien on the proceeds of any recovery by the claimant to the extent of compensation and medical expenses awarded. While the payments of a compensation carrier are not normally advances to a claimant for which repayment is contemplated, where a third-party tort-feasor is involved, different considerations are evident. In such an instance, section 29 provides that compensation and medical payments may be recouped by the compensation carrier 'whenever a recovery is obtained in tort for the same injury that was a predicate for the payment of compensation benefits' *(Matter of Petterson v Daystrom Corp.,* 17 NY2d 32, 39; see, also, *Matter of Ryan v General Elec. Co.,* 26 NY2d 6, 9; *Calhoun v West End Brewing Co.,* 269 App Div 398, 400).

"Since its establishment in the early part of this century, workmen's compensation has been envisioned by the Legislature as a system whereby employees sustaining accidental injuries arising out of and in the course of their employment might be compensated for their injuries regardless of fault (see Workmen's Compensation Law, § 2, subd 7; § 10). It was also recognized, however, that although funded primarily by means of employer contributions, measures had to be taken which would ensure that the cost of providing this protection to injured employees did not escalate to the point of economic impracticality (see 1 Larson, Workmen's Compensation Law, § 2.70, pp 13-14). That this cost factor is of manifest concern to the Legislature is evinced by section 18 of article I of the Constitution of the State which provides that compensation payments 'shall be held to be a proper charge in the cost of operating the business of the employer.' Moreover, in realizing that a workable system of compensation could not totally redress an injured employee's injuries and remain a financially viable institution at the same time, a decision was reached whereby a limitation was placed on the amount of

benefits recoverable by a compensation claimant (see Workmen's Compensation Law, §§ 12, 15, subd 2).

"Viewed in this light, the intent behind the enactment of section 29 of the Workmen's Compensation Law (L 1937, ch 684, as amd) is obvious. Where a compensation claimant is injured due to the fault of one not a fellow employee, the Legislature has provided a means whereby the claimant may recover damages to compensate him for the full extent of his injuries, a remedy not otherwise available within the compensation system, by permitting him to prosecute a third-party action against the party actually responsible for those injuries (see *Koutrakos v Long Is. Coll. Hosp.,* 47 AD2d 500, 505, affd 39 NY2d 1026). At the same time, *the statute cushions the inflationary impact of the cost of compensation insurance and avoids double recovery by the claimant for the same predicate injury by permitting the compensation carrier to recoup its compensation and medical payments from the third-party tortfeasor by means of its section 29 lien on the claimant's recovery in the third-party action* (see *Matter of Curtin v City of New York,* 287 NY 338, 340; *Becker v Huss Co.,* 43 NY2d 527)" (emphasis supplied).

Given the historical importance of the compensation lien *(Matter of Granger v Urda, supra;* see *Grello v Daszykowski,* 58 AD2d 412, 420, concurring opn by Shapiro, J., revd on other grounds 44 NY2d 894), it is nothing short of incredible to believe that the Legislature could have intended its emasculation by enacting chapter 190 of the Laws of 1975. That amendment to subdivision 1 of section 29 provides that where an employee secures a recovery from a third party, the court shall, upon application of the employee, "equitably apportion" the reasonable and necessary expenditures, including attorneys' fees, incurred in effecting such recovery, between the employee and the "lienor". The form of this amendment—which provides for an equitable apportionment of expenses, rather than a formula as such—was based largely upon the recommendation of the Law Revision Commission. The purposes of the amendment, and an understanding as to what was contemplated thereby, can best be gleaned from that recommendation, the full text of which follows:

"When an employee is injured in the course of his employment he is commonly entitled to receive an award under the Workmen's Compensation Law even though the injury was caused by the negligence of a third party, that is, someone

other than his employer or a fellow employee. In such cases the amount of the compensation award, which of course is paid by the employer or his insurance carrier, may be less than can be obtained by an action in the courts against the negligent third party. Such an action can be maintained initially by the injured employee or, pursuant to statutory subrogation, by the person (the employer or his insurance carrier) who paid the employee's compensation award.

"Section 29 of the Workmen's Compensation Law first declares that the employee need not elect whether to take compensation or sue the third party in the courts but may pursue both remedies. Moreover, should the employee not bring action within the prescribed time, the right to sue is given to the carrier. The carrier is motivated to sue both by the promise of reimbursement and by the possibility of a windfall recovery, hereinafter discussed.

"Under § 29 the employee may sue the third party within six months after he is awarded compensation. Within 30 days after suit is begun he must notify the Compensation Board, his employer and the latter's insurance carrier. The carrier (including a self-insuring employer or the State Insurance Fund where appropriate) is given a lien on the proceeds of any recovery in the lawsuit to recompense it for the compensation it has been and will be paying to the employee under the award and for certain related expenses. If the employee does not sue, and six months have elapsed, and the carrier has given the employee 30 days written notice, the right to sue becomes that of the carrier. The carrier then may sue for all damages obtainable, and if its recovery in the courts exceeds the amount of its lien for past and future compensation payments and related expenses, it may keep one-third of such .excess in addition to the amount of its lien, turning over the remaining 'excess' to the injured employee. Thus the carrier has a lien for its own outlay, whoever brings the action, and if the carrier brings the action and secures a recovery, it receives its lien and, in addition, a windfall of one-third of the excess. The obvious purpose of this windfall is to give the carrier an inducement to sue whenever the employee has failed to do so.

"Attorneys' fees, however, are a prior lien. Thus, attorneys' fees are first deducted from the third-party recovery; then the carrier's lien is satisfied; and, finally, the excess (or two-thirds

of it, depending on the initiator of the action) goes to the injured employee.

"*Two results of this procedure call for a change in New York law. First, the carrier receives its lien without contributing to the cost of securing the recovery.* Employees, encouraged to sue by the structure of the act, obtain a recovery from which the carrier benefits and yet the carrier need not share in the costs. When the carrier sues, its attorneys' fees are paid in full and then it receives the amount of its lien. The employee receives the excess, if any, only after the lien of the carrier's attorneys' fees has been discharged. Thus, the carrier's attorneys' fees reduce the employee's excess recovery. Yet, when the employee sues, he normally bears the entire burden of attorneys' fees. *Second, when the excess is modest or non-existent, the employee, who has gone to the trouble and expended the time required to make the lawsuit a success, finds that after his own lawyer's and the carrier's liens have been paid off, there is little or no net recovery left for him. It was his lawyer's efforts that brought about the recovery out of which the carrier's subrogation lien is being paid in full, and yet the carrier is not making any contribution toward the legal expenses.*

"The Commission believes that the present law is unfair to the employee and should be amended to provide for some apportionment of his legal expenses. That others are of the same opinion may be inferred from the growing popularity of apportionment statutes. Among the states which apportion legal fees in third-party actions are Delaware, Illinois, Indiana, Kansas, Maine, Maryland, Massachusetts, Michigan, New Jersey, Pennsylvania, Virginia and Washington. *In certain other states,* such as Arkansas, Oregon and Wisconsin, *the problem is met, not by apportioning the legal expenses, but by guaranteeing the employee a percentage of the recovery after deduction of all legal expenses.* Missouri and Florida provide for both the apportionment of fees and an equitable division of the insurer's lien.

"*Methods of apportionment vary from state to state. The trend, however, seems to be away from rigid statutory formulas and in favor of a simple provision for equitable apportionment by the court which has the third-party action before it. Apart from any consideration of trends, the Commission prefers the latter approach, since it is more practical and flexible*" (Recommendation of Law Rev Comm to Legislature, Mc-

Kinney's 1974 Session Laws of NY, pp 1904-1906; emphasis supplied).

Simply stated, the 1975 amendment was intended to accomplish two things. First, it was intended to assess the compensation carrier for the benefit derived by it from the collection of its lien. Second, it was intended to avoid the evil of having the attorney's lien and the compensation lien swallow up most of a small recovery. The Law Revision Commission's reference to the approach taken in Arkansas, Oregon and Wisconsin, where the employee is guaranteed a percentage of the recovery after deduction of all legal expenses, would appear to relate to the latter problem, and the said reference offers a clue as to why the commission favored a general provision for equitable apportionment.

Were the sole concern one of levying a "collection" charge on the compensation carrier, it would have been appropriate to establish a statutory formula whereby that percentage which the attorneys' fees bore to the total recovery would be applied to, and would reduce, the lien of the compensation carrier. But because of the second concern, over small recoveries where little or nothing might be left over for the injured employee, it appears that the Law Revision Commission wanted to permit courts the flexibility of placing a floor under which the ultimate recovery of the employee would not be reduced. In situations such as these, the lien of the compensation carrier would necessarily have to be compromised to an even greater extent than would be possible under a statutory formula.

But there is nothing in the commission's recommendation, nor in the legislative history, to suggest, as the minority opinion does, that the lien should be wiped out—at least to the extent of the full amount of the attorneys' fees—in every case where the employee's recovery is less than "the sum of the lien plus the estimated liability of the carrier extinguished by the recovery". It is pure sophistry to suggest that the compensation carrier should pay attorneys' fees for the "collection" of a lien that it will never realize and for the discharge of future contingent liabilities which may never materialize.[2] Yet that is exactly what Special Term has done.

---

2. As noted, *infra,* section 22 of the Workers' Compensation Law provides for the modification of compensation awards where there has been "a change in conditions". (See, also, Workers' Compensation Law, § 15, subd 6-a; § 123.) Improvements in the physical conditions of employees have not been unknown to occur, and there is

It is true, as the minority view contends, that plaintiff would not be required to pay attorneys' fees had he simply opted to collect compensation checks and foregone a third-party action. But in that case, the compensation carrier would have been subrogated to his rights against the third-party tort-feasor (see Workers' Compensation Law, § 29, subd 2). The carrier would have had the opportunity to recover all sums expended or reasonably expected to be expended in discharge of its duty to the injured employee. In the event an amount in excess of such expenditures *(plus a reasonable amount for recovery of said expenditures)* were recovered, the carrier would pay two thirds of such excess to the injured employee.[3]

It is clear that whether the injured employee elects to bring a third-party action or not, the statute contemplates at least the opportunity for recovery, by the compensation carrier, of sums actually expended. Where the employee elects to bring a third-party action, the carrier has a lien on any recovery. Where the employee opts not to bring a third-party action, the carrier has a right of subrogation. At bar, however, the carrier has, as a result of the apportionment made by Special Term, been deprived of its statutory right to a lien on the more than $20,000 already paid to plaintiff. The plaintiff will effectively receive the "double satisfaction" which the lien provided for in section 29 is intended to prevent (see *Becker v Huss Co.,* 43 NY2d 527, 538), since the $75,000 settlement presumably encompasses "special" damages already sustained and paid for to the extent of $20,402 by the compensation carrier.

There is no merit to the claim made in the minority opinion that an employee's recovery in a third-party action "takes the place of his compensation award" and would be "diluted" absent the approach taken by Special Term. In any case where a third-party recovery falls short of what the compensation carrier is or will be obligated to pay, the Workers'

---

always the possibility that a compensation award may be diminished or terminated (see, e.g., *Matter of Sepulveda v Fischl Bros. Button Co.,* 38 AD2d 983; *Matter of Mesiti v Lucille's Beauty Salon,* 31 AD2d 859; *Matter of Blanchard v U.S.O. Camp Shows,* 4 AD2d 894).

3. One third of such "excess" is apparently intended to compensate the carrier for attorney's fees expended in securing the recovery. It is significant that where the carrier sues as subrogee of the injured employee, its attorneys' fees are effectively assessed against the employee since no "excess" is payable to the employee until the carrier's expenses of effecting its recovery are deducted and, even then only two thirds of such "excess" is payable to the employee.

Compensation Law provides that the carrier make up the deficiency (Workers' Compensation Law, § 29, subd 4). The statute has been construed to provide for "deficiency" payments over and above an employee's *net* recovery—i.e., the total recovery less the expenses reasonably and necessarily incurred in obtaining the said recovery *(Matter of Curtin v City of New York,* 287 NY 338). In the language of the statute, the compensation carrier must cover "the deficiency, if any, between the amount of the recovery against [the third-party tort-feasor] *actually collected,* and the compensation" to be provided under the Workers' Compensation Law (Workers' Compensation Law, § 29, subd 4; emphasis supplied).

■ At bar, plaintiff has foreclosed his right to any deficiency payments because of his unilateral action in settling the third-party action without either (1) the consent of the compensation carrier, or (2) a compromise order pursuant to subdivision 5 of section 29 of the Workers' Compensation Law. It is settled that such unilateral action on the part of claimant relieves the compensation carrier of further liability as a matter of law (see *Matter of Kusiak v Commercial Union Assur. Cos.,* 49 AD2d 122, 124; see, also, *Matter of Nachison v Phoenix of Hartford Ins. Co.,* 30 AD2d 499). But assuming plaintiff had acted within the framework of the law, he would have been deprived of nothing had Special Term apportioned the attorneys' fees so as to assess the compensation carrier only for the "collection" of its lien. The mathematics of such a result would be as follows:

| | | |
|---|---|---|
| Total Settlement | | $ 75,000 |
| Less: | | |
| Attorneys' Fees (set at ⅓ the total recovery)................... | ($ 25,000) | |
| Compensation Carrier's Lien after setoff of ⅓ total lien as carrier's share of attorneys' fees ($20,402 − 6,801 = $13,601)....... | ( 13,601) | |
| Total Reduction | ($ 38,601) | ( 38,601) |
| Amount "actually collected" (Workers' Compensation Law, § 29, subd 4) | | $ 36,399 |

Plaintiff was receiving $80 per week from the compensation carrier. Assuming he had never brought a third-party action, and further assuming that his physical condition remained such that he continued to receive $80 per week for 20 years,

he would have received a total of $103,602 from the carrier, figured as follows:

| | |
|---|---|
| Payments already received | $ 20,402 |
| Weekly payments ($80 × 1,040 weeks) | 83,200 |
| Total | $103,602 |

He would have received precisely the same amount by reason of the operation of the "deficiency" provision contained in subdivision 4 of section 29 of the Workers' Compensation Law, even though his "share" of the costs of the third-party recovery had been deducted:

| | |
|---|---|
| Payments already received | $ 20,402 |
| Plus: | |
| Amount "actually collected" in the third-party action (representing the equivalent of $454^{7}\%_{0}$ weeks)[4] | 36,399 |
| Deficiency payments ($80 × $585\frac{1}{8}_{0}$ weeks)[5] | 46,801 |
| Total | $103,602 |

It is apparent that under the statutory scheme an injured employee suffers no dilution of the benefits to which he would otherwise be entitled by proceeding in a third-party action and by paying that proportion of the attorneys' fees which his "share" of the recovery (i.e., the total settlement less the compensation lien, if any) bears to the total recovery.[6] On the other hand, adoption of the approach taken by Special Term, and espoused by the minority, results in the effective destruction of the carrier's rightful lien and fancifully ignores the possibility of future modifications of compensation awards, occasioned by a change in the employee's condition (Workers' Compensation Law, § 22).

Accordingly, the order appealed from should be reversed insofar as it (a) apportions all of the attorneys' fees against appellant, Utica Mutual Insurance Company, and (b) vacates the appellant's lien. We hold that appellant's equitable share of the attorneys' fees shall be one third of $20,402, or $6,801,

---

4. The figure of $454^{7}\%_{0}$ weeks is obtained by dividing the $80 plaintiff was receiving per week into the $36,399 "actually collected" in the third-party suit.

5. The figure of $585\frac{1}{8}_{0}$ weeks is obtained by subtracting the $454^{7}\%_{0}$ weeks which correspond to the amount "actually collected" from the 1,040 weeks plaintiff would have received payment, under this hypothetical, had he never brought a third-party action.

6. We have not undertaken an exhaustive study of the workers' compensation statutes in those jurisdictions cited by the minority opinion. It is readily apparent, however, that primarily because of the provision for "deficiency" payments contained in subdivision 4 of section 29 of the Workers' Compensation Law, and the construction of that section by the courts (e.g., *Matter of Curtin v City of New York*, 287 NY 338), the reasons which may have prompted courts in other jurisdictions to apportion expenses as they have are not apropos in this State.

and that its lien shall be set off by that amount. We express no opinion as to the proper form of apportionment in a case where the excess of a third-party recovery over and above a compensation carrier's lien plus attorneys' lien is "modest or non-existent." (See Recommendation of Law Rev Comm to Legislature, McKinney's 1974 Session Laws of NY, p 1905.) Suffice it to say that on these facts, it was an abuse of discretion to assess all expenses against appellant.

SHAPIRO, J. P. (concurring in part and dissenting in part). Relying upon subdivision 1 of section 29 of the Workers' Compensation Law, Special Term ruled that where an injured employee (plaintiff William Castleberry) agrees to accept a certain sum by settlement of his personal injury action, the court could properly require the compensation insurance carrier (appellant here) to pay not only that portion of the attorneys' fee (incurred in the pursuit of the tort action) attributable to the recovery of its lien, *but in addition the amount of its potential compensation liability which was extinguished by the settlement.* The court further determined that in doing so it was proper for it to estimate the value of the future liability of which the compensation carrier, Utica Mutual, was relieved. Contrary to the views of the majority, I agree with the conclusion of Special Term. However, for the reasons hereafter stated, I believe that it did not properly determine the *present value* of appellant's *future* liability. Hence, while I agree that there should be a reversal, I would remit the matter to have that value properly fixed.

### THE FACTS

On November 15, 1973 William Castleberry (hereafter plaintiff), who was then employed by the Howard Rice Trucking Company, slipped and fell from defendant Hudson Valley Asphalt Corporation's (Hudson) platform. Appellant, Utica Mutual Insurance Company, provided compensation coverage for plaintiff's employer. Pursuant to a Workers' Compensation Board finding that plaintiff was injured in the course of his employment, Utica Mutual made compensation payments to plaintiff of $95 per week from November 15, 1973 to April 8, 1974, and $80 per week thereafter. Plaintiff commenced an action against defendant Hudson on April 17, 1974 to recover damages for his personal injuries.[1] After a trial, the jury

---

1. Subdivision 1 of section 29 of the Workers' Compensation Law states that an employee who is entitled to compensation need not elect whether to take compensation or pursue his remedy against a third-party tort-feasor, but may do both.

returned a verdict in favor of plaintiff William Castleberry for $54,415.30, and in favor of plaintiff Carol Castleberry for $5,000. On appeal, this court found reversible error and granted defendant a new trial *(Castleberry v Hudson Val. Asphalt Co.,* 60 AD2d 878). Subsequent negotiations resulted in a *contingent* settlement of the action for $75,000.[2] Plaintiff alleges that Utica Mutual refused to accede to his request to waive its statutory lien in order to facilitate settlement negotiations.[3] In this connection it should be noted that Utica does not contend that the offer of $75,000 is inadequate so that is not an issue in this case.

### THE DECISION OF SPECIAL TERM

Special Term in pertinent part said (97 Misc 2d 578, 579-581):

"This is an application pursuant to the provisions of subdivision 1 of section 29 of the Workers' Compensation Law for an order apportioning 'the reasonable and necessary expenditures, including attorney's fees,' incurred by the plaintiff in effecting a recovery in this third-party action. * * *

"The only issue between this employee and the compensation carrier is the apportionment of the $25,000 attorney's fees.

"Plaintiff suggests that Utica Mutual's entire $20,402 lien be set aside as its portion of attorney's fees and expenses incurred procuring this $75,000 settlement. *Utica Mutual,* which came close to obstructing plaintiff's ability to recover a substantial verdict, *acknowledges its obligation to pay one-third attorney's fees based only on the amount of its lien for past compensation payments.* * * *

---

2. Although the record on appeal is sparse, both parties seem to agree that the settlement was dependent upon the outcome of the instant motion. Plaintiffs' attorneys say that the $75,000 settlement is "subject to the making of this application for equitable apportionment by the Court". Appellant admits that now "[a]s it stands the plaintiff can choose to refuse the $75,000.00 settlement offer, from which a counsel fee would be deducted, and try his cause of action." In footnote 1 of the majority opinion, Mr. Justice MARGETT states that "this court has ascertained for plaintiff's attorney that the third-party settlement has been finalized." I can only assume that that means that the third party (Hudson) has paid over the proceeds of the settlement in *escrow* subject to the determination of this appeal. Hence, that fact would seem to have no bearing on the issue involved in this case.

3. Section 29 of the Workers' Compensation Law gives the compensation carrier a lien on the third-party judgment or settlement proceeds in the amount of the compensation actually paid to the injured employee.

"It is conceded by the carrier that based on plaintiff's life expectancy, the 'probable total amount' of its compensation obligation calculated on weekly payments of $80 would exceed the amount of this settlement. If Utica Mutual had been forced to exercise its subrogation rights under subdivision 2 of section 29 after payment of attorney's fees, it would have been entitled to estimate and deduct from the settlement, as a benefit to itself, the total amount of future periodic payments it owed to plaintiff. Subdivision 1 also provides that the estimated future compensation shall be 'deemed for the benefit of such * * * carrier.'

"As a practical matter in this case, the carrier's future obligation to the plaintiff has been diminished, if not completely satisfied by this settlement agreement (Workers' Compensation Law, § 29, subd 4). By virtue of the wording of the enactment itself, the respondent carrier is deemed benefited in an amount at least equal to the amount of the full settlement. Therefore, since the full amount of this settlement inures to the benefit of the carrier, it should bear the attorney's fees for the full amount of the settlement.

"The carrier protests that such a result creates a windfall for the plaintiff, who it alleges will pay no attorney's fees. However, it does not appear to this court that the plaintiff is receiving anything more than what he would have been entitled to in the future from the carrier if he had not commenced this action. The suggestion that an injured employee should pay attorney's fees on a settlement which he had procured and which is deemed by statute totally for the benefit of the compensation carrier is rejected by the court.

"It would be an inequitable anomaly if subdivision 1 of section 29 is interpreted so as to place the burden on an employee for attorney's fees due on amounts deemed recovered by him for the benefit of a compensation carrier when subdivision 2 of the enactment explicitly authorizes a one-third deduction (presumably for attorney's fees incurred by the compensation carrier) from any excess recovery obtained by the carrier for the benefit of the employee.

"Therefore, plaintiff's motion is granted to the extent that the court apportions all attorney's fees against the respondent and accordingly vacates the entire amount of its lien." (Emphasis supplied.)

## THE LAW

### I

Utica Mutual argues that the "proper and sole relief" authorized by subdivision 1 of section 29 of the Workers' Compensation Law on an application to apportion the legal expenses of plaintiff's third-party action is to charge it with a portion of the fee in the same ratio that its lien bears to the total recovery. Plaintiff responds that Utica Mutual's portion of the fee may, in the court's discretion, be based on a ratio made up of the lien *plus* estimated future compensation payments which would necessarily have been paid by it but for the settlement.

Subdivision 1 of section 29 provides, in pertinent part: "[In an action brought by an injured employee against another not in the same employ (a 'third-party' action) the] insurance carrier liable for the payment of such compensation * * * shall have a lien on the proceeds of any recovery from such other, whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case and the expenses for medical treatment paid or to be paid by it and to such extent such recovery shall be deemed for the benefit of such fund, person, association, corporation or carrier. Should the employee or his dependents secure a recovery from such other, whether by judgment, settlement or otherwise, such employee or dependents may apply on notice to such lienor to the court in which the third party action was instituted, or to a court of competent jurisdiction if no action was instituted, for an order apportioning the reasonable and necessary expenditures, including attorneys' fees, incurred in effecting such recovery. Such expenditures shall be equitably apportioned by the court between the employee or his dependents and the lienor." The last two sentences quoted above were added by amendment effective June 10, 1975 (L 1975, ch 190). *Becker v Huss Co.* (43 NY2d 527), decided in February, 1978, provides a review of the history of section 29. The opinion, in pertinent part, reads (pp 537-539, 543, 544):

"Section 29 of the Workmen's Compensation Law governs the rights and liabilities of employee-claimants and their employers where injury is caused by a third party. Prior to

1937, the employee or his dependents were forced to elect between compensation benefits and a third-party action (see L 1913, ch 816, § 29; *Matter of Curtin v City of New York,* 287 NY 338, 340). If compensation were chosen, the cause of action against the third party was assigned, by operation of law, to the compensation carrier (see L 1913, ch 816, § 29). If, on the other hand, a third-party action was pursued by the employee, unless the recovery was less than the compensation benefits, the claim to compensation was lost *(id.).*

"With a 1937 amendment, however, the Legislature abolished the forced election, giving the employee or his dependents the right to collect compensation benefits without relinquishing the right to a third-party action (§ 29, subd 1, as amd by L 1937, ch 684). But to avoid a double satisfaction, and continuing the concept that the carrier's obligation should be diminished when damages are recovered from a third party, the carrier's lien was introduced *(id., Matter of Curtin v City of New York,* 287 NY 338, 342-343, *supra).* Subject only to 'deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting [the third-party] recovery', the carrier has a 'lien on the proceeds of any recovery', from a third party 'to the extent of the total amount of compensation awarded' (§ 29, subd 1). If, however, after a prescribed time period the employee or his dependents fail to pursue the remedy against the third party the employer or his carrier is, as under the earlier statute, subrogated to the claim *(id.,* subd 2). Should the carrier then recover more than the compensation paid plus the expenses incurred, two thirds of that excess must be turned over to the employee or his dependents *(id.).*

"Despite its liberalizing changes the 1937 amendment still proved unsatisfactory. Where an employee recovered from a third party, once the attorney's lien was satisfied the carrier received the full amount of its lien without contributing to the litigation expenses, including the lawyer's fees. In short, the carrier benefited from a fund without having shared the burden of creating it. Yet, when the third-party action was brought by the carrier, not only did the carrier's and attorney's liens again receive priority over the employee, but the employee received only two thirds of the excess. Also problematic were modest third-party recoveries. Discharge of the lien of the attorney and carrier meant that little of the fund, if any, was left for the employee. (See Recommendation of the

Law Revision Commission, McKinney's 1975 Session Laws of NY, p 1552.)

"These inequities prompted widespread criticism, some litigation, and ultimately, legislative correction (see *Koutrakos v Long Is. Coll. Hosp.*, 47 AD2d 500, 506, affd 39 NY2d 1026; *Kussack v Ring Constr. Corp.*, 1 AD2d 634, 635, affd 4 NY2d 1011). The Law Revision Commission had repeatedly recommended that the carrier share responsibility for the litigation expenses, including lawyer's fees, incurred by the employee (see, e.g., Recommendation of the Law Revision Commission, McKinney's 1975 Session Laws of NY, pp 1551-1554, NY Legis Doc, 1975, No. 65[F]; McKinney's 1974 Session Laws of NY, vol 2, pp 1904-1907, NY Legis Doc, 1974, No. 65[F]; McKinney's 1971 Session Laws of NY, vol 2, pp 2333-2335, NY Legis Doc, 1971, No. 65[B]). Eventually, the 1975 statute was enacted * * * Thus, New York joined the increasing number of States favoring apportionment (see Recommendation of the Law Revision Commission, McKinney's 1975 Session Laws of NY, p 1553; 2A Larson, Workmen's Compensation Law, § 74.32, esp pp 14-232—14-233, and n 56 [1976 & 1977 Supp]; Workmen's Compensation—Tort Suit Expenses, Ann., 74 ALR3d 854, pp 863-866). * * *

"As to how the lienor's share of the expenses should be calculated, extended discussion is not required. The statute is explicit: 'expenditures shall be equitably apportioned' (§ 29, subd 1). If that were not enough, the Law Revision Commission concluded that an equitable apportionment was more practical and flexible than a rigid statutory formula (see Report of the Law Revision Commission, McKinney's 1975 Session Laws of NY, p 1553). It does not follow, however, that standardized fees in personal injury cases should be ignored or that, except in the rare case, the lawyer's fees should be determined on *quantum meruit*. That would be unrealistic. Instead, so long as the court weighs variable and distinguishing factors, which might suggest departure from the retainer or standardized fees set by local custom or court rule, standardized fees may be used. Such factors might include the reasonableness of the lawyer's retainer and whether it was improperly influenced by the expectation that the lienor would be sharing in the burden of that fee, the fact that recovery was unusually simple or liability especially clear, and any other equitable circumstances. The practical advan-

tage in limiting or even eliminating hearings on the application is evident. * * *

"The ultimate determination of the equitable apportionment of legal expenses, both for jurisdictional and practical reasons, resides in the courts vested with the powers of fact finding and the exercise of a sound discretion. Only principles involving questions of law would remain subject to review as questions of law. Hence, it will be the unusual case in which review beyond the Appellate Division would be useful or available. (Cohen and Karger, Powers of the New York Court of Appeals [rev ed], §§ 145, 148.)"

Appellant, Utica Mutual, contends that the "rule" followed in New York since the 1975 amendment has been to require the compensation carrier to pay *only* that portion of fees and expenses attributable to the recovery of its lien amount. Appellant cites *Sysler v Helms Express* (NYLJ, Feb. 19, 1976, p 7, col 2), *Rice v Bankers Trust Co.* (83 Misc 2d 797), *Greenough v Deblinger* (84 Misc 2d 463), *Wargo v Longo* (85 Misc 2d 898), *Cardillo v Long Is. Coll. Hosp.* (86 Misc 2d 438) and *Cohen v Grant* (87 Misc 2d 780, affd 93 Misc 2d 824). While it is true that in those cases the court applied the formula advocated by appellant the main issue involved in most of those cases was whether to apply the 1975 amendment retroactively (the principal issue decided in *Becker v Huss Co.,* 43 NY2d 527, *supra).* Moreover, the cases do not provide any reasoning or explication for the conclusion reached. Apparently, the *ratio decidendi* for their conclusion is that the injured employee, by his recovery in the third-party suit, has "collected" the lien of the compensation carrier and that, therefore, the carrier should be required to pay the attorney's fee for that service. (See *Koutrakos v Long Is. Coll. Hosp.,* 78 Misc 2d 39, 40, mod 47 AD2d 500, affd 39 NY2d 1026.)[4]

---

4. Appellant's cases actually apply two different, but mathematically equivalent, formulas for calculating the carrier's portion of the attorney's fee. The first method is to multiply the total attorney's fee by the ratio of the lien to the total recovery. The second method is to multiply the lien by the attorney's contingent fee percentage. These methods are equivalent:

Let $A$ = Lien
$B$ = Recovery
$C$ = Attorney's fee
$D$ = Attorney's contingent fee percentage
$X$ = Carrier's portion of attorney's fee
(N.B. $D = {}^{C}/_{B}$).

Utica Mutual also argues that the language of the amendment itself supports the view that its share of the attorney's fees should be based solely on the existing lien without regard to the benefit it is obtaining by having its liability for future compensation payments entirely extinguished. It points to the words of the statute that the fee should be "apportioned" between the employee and the carrier. That language, appellant argues, is inconsistent with assessing the entire fee against it as Special Term did here.[5] Appellant's contention lacks merit for it fails to realize that the method used by Special Term will not inevitably result in an allocation of the entire legal expense to the carrier. Thus, if the employee's recovery exceeds the sum of the lien *plus the estimated liability of the carrier extinguished by the recovery,* then, under the procedure employed by Special Term, the employee must pay the attorney's fees on the excess. Here, because there was no such excess, it assessed Utica Mutual with the entire legal fee to the extent of canceling its lien.

---

First method:

$$C \cdot \frac{A}{B} = X$$

Second method:

$$D \cdot A = X$$

Substituting for D,

$$\left( \frac{C}{B} \right) \cdot A = X$$

Thus,

$$C \cdot \frac{A}{B} = X$$

5. The insurer could also point to subdivision 2 of section 29 to support its argument that it should pay fees only on the lien. Subdivision 2 provides that if the employee fails to commence a suit against the third party within a certain period of time, this failure operates to assign the cause of action to the insurer. All costs of the action (i.e., attorney's fees) are paid from any recovery. The insurer then receives a sum equal to the compensation awarded (which, when the award requires periodical payments, is estimated based on a mortality table and "such facts as [the board] may deem pertinent"). Any excess over the compensation amount is split two thirds to the employee and one third to the insurer. The contention could be made that subdivision 2 indicates a legislative intent to insulate insurers from the payment of attorney's fees since payment of the costs of the third-party action from the recovery directly reduces the excess available to the employee while allowing the insurer an amount equal to the compensation it will have to pay without requiring any contribution for attorney's fees. However, it is still true that the employee will not pay attorney's fees on his periodical compensation payments, which he continues to receive whatever the disposition of the insurer's third-party action. Looked at differently, the legal fees incurred in the insurer's third-party action are not deducted from the compensation payments still owed to the employee.

I believe that the 1975 amendment sanctions the method used by the Special Term. However, neither the plaintiff employee nor Special Term clearly articulated the strongest argument in favor of an apportionment based on the lien *plus the estimated potential liability of the carrier; to wit, that the employee's recovery, which takes the place of his compensation award, should not be diluted by the extra expense of legal fees.* If the plaintiff had failed to bring a third-party action, but instead had simply continued collecting his weekly compensation check, he could *not* be required to pay attorney's fees in order to receive that money. The Legislature therefore could not have intended that where an employee effects a recovery in a third-party action which essentially replaces his right to collect weekly benefits, that the employee should pay attorney's fees on the recovered amount. Rather, the employee should have the right to that amount without paying attorney's fees, insofar as the recovery does not exceed the benefits paid to the employee to date plus the estimated future liability of the carrier. To hold otherwise would mean that the employee's *statutorily guaranteed compensation* is reduced in the amount of the fees he is required to pay to effect his recovery.

The legislative history of the 1975 amendment, so far as it can be ascertained, does not settle the issue. The Recommendation of the Law Revision Commission (McKinney's 1975 Session Laws of NY, pp 1551, 1554, NY Legis Doc, 1975, No. 65[F]), points to the unfairness of the unamended statute under which the employee was required to pay all the fees incurred by his recovery (by virtue of the prior compensation lien). The language of the recommendation indicates that the chief inequity which the commission wanted corrected was the carrier's recovery of its lien without paying fees: "It was [the employee's] lawyer's efforts that brought about the recovery out of which the carrier's subrogation lien is being paid in full, and yet the carrier is not making any contribution toward the legal expenses" (McKinney's 1975 Session Laws of NY, p 1552). However, the commission was apparently aware that some States require the carrier to pay attorney's fees based on the amount of compensation actually paid out by the carrier *plus* its estimated potential liability (see McKinney's 1975 Session Laws of NY, p 1553, recognizing that, at that time, 12 States by statute allowed apportionment of fees and that the courts in some of those States have reached the issue

here presented and decided it in favor of the employee, as will be discussed *infra;* Atleson, Workmen's Compensation: Third Party Actions and the Apportionment of Attorney's Fees, 19 Buffalo L Rev 515, written by the author of a study on the subject made for the Law Revision Commission). The latter article recognizes that some States allocate fees to the insurer based on its lien and estimated potential liability and states that "it seems equitable for the employer to bear part of the cost of securing this benefit" *(id.,* at p 533). To me it seems clear that at the very least, the commission intended that the courts be empowered to go beyond charging a fee based solely upon the lien because the amendment it recommended (which was subsequently adopted) refrains from using the existing lien as the maximum base for fees.

*Becker v Huss Co.* (43 NY2d 527, *supra)* also does not directly address the issue posed by our case. The Court of Appeals' discussion of apportionment mainly reflects its concern over the dangers inherent in requiring the carrier to pay for the services of a lawyer it did not hire. Because appellant does not contest the reasonableness of the $25,000 fee, that is not an issue on this appeal.

Almost all States which have considered the question before us have resolved it by charging the insurer for the expenses incurred in the recovery of its lien *and* the extinguishment of its estimated future liability. (See Workmen's Compensation—Tort Suit Expenses, Ann. 74 ALR3d 854, § 8, pp 886-893 ["Measure of employer's (Insurer's) pro-rata share"]; 2A Larson, Workmen's Compensation Law, § 74.32, and the cases and statutes collected at n 56.) A brief review of some of those cases follows. *Indiana: Indiana State Highway Comm. v White* (259 Ind 690; statute read "Out of any reimbursement received by the * * * compensation insurance carrier * * * they shall pay their pro rata share of all costs and reasonably necessary expenses in connection with such third party claim"). *Kentucky: Security Ins. Co. of Hartford v Norris* (439 SW2d 68; worker's compensation statute did not provide for sharing of costs of third-party recovery; decision to require sharing to extent that carrier benefits from recovery based on "principles of equity, fairness and justice"). *Michigan: Crawley v Schick* (48 Mich App 728) and *Schalk v Michigan Sewer Constr. Co.* (62 Mich App 658; statute read: "Expenses of recovery shall be apportioned by the court between the parties as their interests appear at the time of the recovery"). *Minne-*

sota: *Quarberg v Laundry Store Sales* (269 Minn 213; statute read: "the employer [insurer] shall bear that proportion of the * * * attorney's fees * * * incurred in making collection from and enforcing liability against the [third] party * * * which the amount claimed by the employer for deduction from, or to be retained against, compensation payable bears to the whole amount recovered from such other party"). *Nebraska: Gillotte v Omaha Public Power Dist.* (189 Neb 444; statute read: "attorney's fees shall be apportioned by the court between the parties as their interests appear at the time of such recovery"). *New Jersey: Caputo v Best Foods* (17 NJ 259; statute made insurer liable for the employee's attorney's fees which was defined as including those fees not in excess of one third of the sum paid in release or in judgment to the injured employee by such third person to which the insurance carrier shall be entitled in reimbursement. "Reimbursement" included the potential liability of the insurer ended by the recovery). *Pennsylvania: Wall v Conn Welding & Mach. Co.* (197 Pa Super Ct 360; statute read: "the [insurer] shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement"). *Utah: Prettyman v Utah State Dept. of Finance* (27 Utah 2d 333; statute read: "the reasonable expense of the action, including attorneys' fees, shall be paid and charged proportionately against the parties as their interests may appear"). *Virginia: Sheris v Travelers Ins. Co.* (491 F2d 603, cert den 419 US 831; statute read: "attorney's fees * * * shall be apportioned pro rata between the [insurer] and the employee * * * as their respective interests may appear"). Contra: *Missouri: Ruediger v Kallmeyer Bros. Serv.* (501 SW2d 56; statute required apportionment of expenses "in the same ratio that the amount due the employer bears to the total amount recovered". However, the court urged the Legislature to re-examine the statute because it was inequitable to the employee).

The cases above cited generally give the following reasons in support of their conclusions that the compensation carrier should pay attorney's fees not only on its present lien but also on the future liability of which it has been relieved: (1) if the insurer need pay fees only on the lien, it has an incentive to delay the payment of compensation to the employee; public policy should not encourage delay in compensation payments;

(2) if the insurer need only pay fees on the lien, the injured employee has an incentive (a) to unnecessarily prolong his lawsuit against the third party, thus accumulating more compensation payments, and (b) to petition the Workers' Compensation Board for commutation of the periodical payments into a lump-sum payment pursuant to section 25 (subd 5, par [b]), prior to settlement or judgment in the third-party action; and (3) workers' compensation laws are remedial legislation, and therefore, borderline interpretations of the law should be resolved in favor of those whom the legislation was intended to benefit.

I thus have come to the conclusion that Special Term was correct in holding that in a third-party action brought by an employee, an insurer *may* be required to pay attorney's fees on its actual lien and on its potential liability which is extinguished by the settlement. The question nevertheless remains whether Special Term, by failing to adjust for the number or present value of the future payments which Utica Mutual need not pay, failed to equitably estimate the present value of the settlement to Utica Mutual.

Special Term stated (97 Misc 2d 578, 580, *supra)* that "[i]t is conceded by the carrier that based on plaintiff's life expectancy, the 'probable total amount' of its compensation obligation calculated on weekly payments of $80 would exceed the amount of this settlement." That statement apparently refers to a stipulation between the parties made at trial that, since on May 27, 1977, plaintiff employee's life expectancy was 20 years and his payments $80 per week, Utica Mutual's liability would be more than $80,000. Because this sum alone (without regard to the amount of the lien as of May 27, 1977) exceeded the settlement total of $75,000, Special Term held Utica Mutual solely responsible for the entire attorney's fee incurred in the third-party action.[6] However, it seems clear that Utica Mutual does not obtain a present benefit of $80,000 from the settlement, but only the *present value* of the periodic payments which the settlement relieves it from making.

### CONCLUSION

Special Term was correct in concluding that an equitable

---

6. The fee amounted to $25,000. Special Term canceled the lien of $20,402, but did not assess Utica Mutual an additional $4,598 apparently because plaintiff requested cancellation and nothing more.

apportionment of fees must account for the fact that the employee's recovery has diminished or ended the carrier's liability for compensation payments. However, the court failed to calculate the number or present value of such payments, and instead simply added up all periodic payments over the assumed lifespan of the employee, thus overestimating the benefit of the settlement to the insurer.[7]

Section 25 (subd 5, par [b]) of the Workers' Compensation Law contains the statutory device for such a calculation, for it permits the board to commute periodical payments into a lump-sum payment "in the interests of justice" in accordance with section 27 of the Workers' Compensation Law, which provides for the calculation of present value.

The order appealed from should be therefore reversed and the matter remitted to Special Term for a determination of the number and present value of the future compensation payments which Utica Mutual is no longer obligated to pay by virtue of the settlement of the third-party action and to fix its fee liability accordingly.

COHALAN and MARTUSCELLO, JJ., concur with MARGETT, J.; SHAPIRO, J. P., concurs insofar as the majority has reversed the order, but otherwise dissents and votes to remit the matter to Special Term for a new determination as to the present value of appellant's future liability, with an opinion.

Order of the Supreme Court, Orange County, dated January 15, 1979, reversed insofar as apealed from, on the law, with $50 costs and disbursements, appellant's equitable share of attorneys' fees is fixed at $6,801, and its lien shall be set off by that amount.

---

7. It could be argued, as does the majority, that a further refinement of the measure of the benefit of recovery to the compensation carrier is possible by taking into account the possibility of future modification of the compensation award (see Workers' Compensation Law, § 22, "Modification of awards, decisions or orders"). This would only be true, of course, if, historically, more awards were modified in one direction than in the other. I do not know whether such information is readily available, or whether it could be particularized, for instance, by type of injury. In any event, modification data would surely be less standardized and reliable than the present value or mortality tables. In the case at bar, there is no contention that the employee's award would have been modified in the future.