In the Matter of CHARLES S. CARLON, Respondent, v EDWARD V. REGAN, as Comptroller of the State of New York, et al., Appellants.

Third Department, January 26, 1984

APPEARANCES OF COUNSEL

*Robert Abrams*, Attorney-General (*Richard J. Dorsey* and *William J. Kogan* of counsel), for appellants.

*Birnbaum, Manaker & Aquilio, P. C.* (*Paul J. Giancola* of counsel), for respondent.

OPINION OF THE COURT

CASEY, J.

Before paying petitioner the full amount of damages awarded him in his action against the State, the Comptroller has the authority to set off against that award the State's valid claim for certain services rendered to petitioner as a patient in the State's mental health facilities.

Special Term's judgment directing respondents to pay the judgment must be reversed.

Following his arrest on burglary charges in 1944, and based upon a court-ordered psychiatric examination, petitioner was committed to the Matteawan State Hospital, an institution for the criminally insane, where he remained until 1966, when the burglary indictment was dismissed and petitioner was transferred to Marcy Psychiatric Center, a civil institution. Petitioner became a voluntary patient at the Marcy facility in 1969 and he was transferred to Hutchings Psychiatric Center in 1978, where he remains an outpatient in a supervised private home. His negligence and medical malpractice claim against the State, arising out of his 22-year confinement at Matteawan, which he filed in 1978, resulted in an award of $125,000. When the State asserted as a setoff against the award its claim of $110,107.92 for the cost of a portion of petitioner's medical care and treatment after his release from Matteawan in 1966,[1] petitioner commenced the instant proceeding seeking to compel payment of the award in full. Concluding, *inter alia,* that the State should have asserted its claim as a counterclaim in petitioner's negligence and medical malpractice action, Special Term granted the petition in part.

Our analysis of the issues raised by this appeal begins with the recognition that the Mental Hygiene Law was recodified in 1972 (L 1972, ch 251, eff Jan. 1, 1973). Pursuant to section 91.03 of the current law, the recodification expressly left unaffected any right accrued or acquired, or any status established prior to its effective date. The State's claim, which the Comptroller has asserted as a setoff, is based upon services rendered by the State's mental health facilities both before and after the effective date of the recodification and, therefore, the parties' rights under both the current law and its predecessor (L 1927, ch 426, as amd) must be considered.

Pursuant to both the current and former acts, the appropriate State agency is required to establish and charge fees for its services to patients, and liability for the fees is imposed on certain persons, including the patient, but no

1. This amount was subsequently reduced to $61,335.38.

person can be denied services because of inability or failure to pay (Mental Hygiene Law, §§ 43.01, 43.03; L 1927, ch 426). Both acts contain provisions concerning the collection of fees (Mental Hygiene Law, § 43.07; L 1927, ch 426), but neither act expressly or implicitly authorizes the Comptroller to use a setoff for the purpose of collecting fees. We conclude, however, that the Comptroller possesses the authority to do so as a function of his constitutional and statutory duty to audit all vouchers before payment (NY Const, art V, § 1; State Finance Law, § 8; see *Matter of Chemical Bank v Regan,* 90 AD2d 581, affd 58 NY2d 809; *Board of Educ. v State of New York,* 88 AD2d 1057; *Matter of Fahey v Whalen,* 54 AD2d 1097, mots to dismiss app granted 41 NY2d 900; *Chemical Bank N. Y. Trust Co. v State of New York,* 27 AD2d 427; *Firemen's Ins. Co. v State of New York,* 91 Misc 2d 183, affd 65 AD2d 241; *Capitol Distrs. Corp. v Kent's Rest.,* 173 Misc 827). Petitioner's remedy is a CPLR article 78 proceeding against the Comptroller to review the audit (*Board of Educ. v State of New York, supra*).

As noted above, the relevant statutory provisions establish petitioner's liability for the fees for services rendered to him while a patient in the State's mental health facilities. Petitioner does not contend that he did not receive the services upon which the State's claim is based. Nor does he challenge the adequacy of those services or the reasonableness of the fees. Petitioner does contend that the Court of Claims intended its award to be free and clear of all claims for petitioner's care and treatment. The award, however, was based solely upon the State's conduct prior to petitioner's release from Matteawan in 1966, a period not included in the State's claim (see Mental Hygiene Law, § 43.03, subd [c]). Significantly, the Court of Claims expressly rejected the testimony of petitioner's expert that petitioner's 22 years of confinement at Matteawan had created mental disorders which necessitated his subsequent confinement and treatment. There is no basis for concluding that the award was intended to be free and clear of claims for medical services rendered after the period encompassed by the award. Next, petitioner argues that an award for personal injuries is exempt from any setoff, relying on

*Baker v Sterling* (39 NY2d 397). *Baker,* however, involved a specific statutory limitation on the State's right of recovery under the Social Services Law, which is not applicable here. Personal injury awards are subject to the State's right to recover for services rendered at its mental health facilities (see *Matter of Seelen,* 87 Misc 2d 360). Petitioner also contends that, as a matter of equity, the State should not "profit" from its own wrong. Concededly, the State rendered the services to petitioner, which, as discussed above, are unrelated to the State's prior "wrong", and by statute the State is authorized to charge fees for those services and petitioner is liable for those fees. We, therefore, perceive no inequity. Special Term held that the State's failure to assert its claim as a counterclaim in petitioner's negligence and medical malpractice action rendered arbitrary and capricious its determination to assert the claim as a setoff against the resulting award. New York, however, has a permissive counterclaim rule and no basis for an exception to that rule exists in this case (see *Batavia Kill Watershed Dist. v Charles O. Desch, Inc.,* 83 AD2d 97, 100, affd 57 NY2d 796). The Comptroller had not only the authority, but also the duty, to make the setoff.[2]

We reject petitioner's argument that, pursuant to subdivision (c) of section 43.07 of the Mental Hygiene Law, the State's claim for services rendered more than six years prior to its attempted setoff is time barred. The former Mental Hygiene Law, effective until January 1, 1973, provided that the six-year period governing claims for services rendered did not begin to run until the date of death or discharge of the patient, whichever occurred first (L 1927, ch 426, as amd by L 1966, ch 256, § 54, repealed by L 1972, ch 251). As noted above, the recodification contained a savings clause concerning the rights established under the former law (Mental Hygiene Law, § 91.03), and in the absence of any evidence of legislative intent to the contrary, the change in the accrual date of the claim for services rendered to a patient should not be applied retroactively (*Matter of Escher,* 94 Misc 2d 952, affd 75 AD2d

---

**2.** Having so concluded, we need not decide whether the State has a lien pursuant to section 43.07 of the Mental Hygiene Law or its predecessor (L 1927, ch 426, as amd by L 1966, ch 256).

531, affd 52 NY2d 1006). Thus, since petitioner has neither died nor been discharged, the State's claim covering the period prior to January 1, 1973 is not time barred (*supra*). The State has limited its claim concerning services rendered after January 1, 1973 to the six-year period prior to the setoff.

The final issue concerns the State's obligation to pay a portion of petitioner's attorney's fees. Petitioner contends that the State is a beneficiary of petitioner's attorney's efforts in obtaining a judgment against which the State can assert its claim and, therefore, should contribute a pro rata share of the attorney's fees. The State, however, is not receiving payment of its claim out of a fund created by the efforts of petitioner's attorneys in obtaining a judgment against a third party (see *Kaplan v Port Taxi,* 89 AD2d 577). Nor is there any statutory provision for such contribution (see *Castleberry v Hudson Val. Asphalt Corp.,* 70 AD2d 228, 235-236). Rather, the State is simply seeking to reduce its liability to petitioner established by the efforts of petitioner's attorney. There is no "benefit" to the State upon which to base any equitable right to contribution.

Since the amount of the award left after the State asserts its claim, an amount which the State has already paid petitioner pursuant to stipulation, is more than sufficient to pay petitioner's attorney's fees, which are the primary obligation of petitioner, there is no need to discuss the priority of the State's claim with respect to the lien of petitioner's attorney created by section 475 of the Judiciary Law.

The judgment should be reversed, and the petition dismissed.

KANE, J. P., MAIN, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law, and petition dismissed, without costs.