In the Matter of ALFRED D. PIPER. STEVEN E. KATZ, as Commissioner of New York State Office of Mental Health, Respondent; JOHN B. LAWLESS, as Conservator of the Property of ALFRED D. PIPER, Appellant.

Third Department, February 16, 1989

APPEARANCES OF COUNSEL

*J. William O'Brien, II,* for appellant.

*Robert Abrams, Attorney-General (Lew A. Millenbach* of counsel), for respondent.

## OPINION OF THE COURT

WEISS, J. P.

This proceeding involves a claim by the Office of Mental Health (hereinafter OMH) for in-patient services rendered to Alfred D. Piper at Binghamton Psychiatric Center in Broome County from January 1, 1970 through December 31, 1972. On January 16, 1975, following transfer to Elmira Psychiatric Center in Chemung County, Piper was placed on "family care" status on which he remained until his death in January 1986. In the meantime, Piper, who apparently was impecunious, inherited in excess of $20,000 in 1978 from his mother's estate. Shortly thereafter, respondent was appointed Piper's conservator *(see,* Mental Hygiene Law art 77).

In March 1986, OMH sent respondent a verified claim in the amount of $25,034.46 for the above-specified services. Thereafter, OMH moved for an order to compel respondent to render a final accounting and pay the claim. Respondent cross-moved to dismiss OMH's application and for authorization to turn the balance of Piper's funds, which exceeded $25,000, to the administratrix of his estate.* Supreme Court granted petitioner's application in its entirety, directing that its claim be paid in full. When petitioner failed to submit an implementing order within 60 days, as specified in the court's decision, respondent moved to have petitioner's application deemed abandoned *(see,* 22 NYCRR 202.48). Supreme Court denied the request and respondent has appealed from both orders.

■ Respondent principally maintains that OMH's claim is untimely by virtue of the governing Statute of Limitations and/or is barred because of laches. We hold otherwise. The Mental Hygiene Law was comprehensively recodified in 1972 (L 1972, ch 251, eff Jan. 1, 1973). Currently, an action for services rendered must be commenced within six years of when the fees become due *(see,* Mental Hygiene Law § 43.07 [c]). Under this standard, OMH's claim would unquestionably

---

* Respondent also filed a separate petition for an order judicially settling his final account *(see,* Mental Hygiene Law § 77.32).

be time barred. However, the recodification included a savings clause expressly preserving any rights acquired prior to the effective date (see, Mental Hygiene Law § 91.03). Under former Mental Hygiene Law § 24 (8) (repealed by L 1972, ch 251, eff Jan. 1, 1973), the six-year limitations period for service claims did not commence until the patient's death or discharge. In *Matter of Carlon v Regan* (98 AD2d 544, *mod on other grounds* 63 NY2d 1011), this court concluded that the change in the accrual date for a service-related claim should not apply retroactively (*supra,* at 547-548). Here, OMH has limited its claim to the three-year period preceding the statutory recodification and thus the provisions of former Mental Hygiene Law § 24 (8) pertain.

Respondent, however, asserts that the second sentence set forth in Mental Hygiene Law § 91.03 effectively renders OMH's claim untimely. This sentence reads as follows: "Persons admitted or certified pursuant to the provisions of article six or article seven of the mental hygiene law as it existed prior to the enactment of this chapter may be *retained* pursuant to the provisions of the respective articles *but in no event to exceed a period of two years from the effective date of this chapter"* (Mental Hygiene Law § 91.03 [emphasis supplied]). Focusing on the underscored language, respondent posits that Piper could be retained only two years following the statutory recodification and was thus effectively discharged on January 1, 1975. As such, the governing six-year limitations period would expire January 1, 1981, rendering OMH's claim untimely. This thesis is not persuasive.

■ As indicated, pursuant to former Mental Hygiene Law § 24 (8) a claim for services rendered accrues upon the "discharge" of a patient. The concluding sentence of Mental Hygiene Law § 91.03 does not speak in terms of "discharge", but refers to the retention of patients under the provisions of the former law for only a two-year period. In our view, the sentence does not effect a statutory discharge of all patients within the State's mental health facilities, a clearly incongruous concept, but actually speaks to a reassessment of each patient's needs as specified under the current law. In Piper's case, this reassessment was apparently accomplished, for after being transferred to Elmira Psychiatric Center in late 1974, he was assigned to "family care" status in January 1975. Notably, the term "discharge" as defined in the governing regulations (see, 14 NYCRR 36.2 [a], eff Aug. 1, 1973) anticipates the termination of a facility's legal responsibility to a

patient. To infer such a result from the language of Mental Hygiene Law § 91.03 is clearly unwarranted. Consequently, we find no basis to respondent's assertion that Piper was discharged on January 1, 1975 *(see also, Matter of Carlon v Regan, supra,* at 548).

■ Respondent's further contention that Piper's "family care" placement in January 1975 was effectively a discharge is also unpersuasive. Initially, we find that Supreme Court properly assessed the consequences attendant Piper's 1975 release into "family care" by the standards then in effect. This conclusion is not inconsistent with our application of former Mental Hygiene Law § 24 (8), for that provision applies only by virtue of the savings provision *(see,* Mental Hygiene Law § 91.03). The regulations contemplate two distinct categories of release. As indicated, the "discharge" of a patient terminates the legal relationship between facility and patient; however, the patient may still receive out-patient treatment *(see,* 14 NYCRR 36.2 [a]). The second category is one of "conditional release" in which the legal relationship remains intact, while the in-patient period of service is ended *(see,* 14 NYCRR 36.2 [b]). Conditional release specifically includes the placement of a patient in "family care" (14 NYCRR 36.2 [b]; *see,* Social Services Law § 209 [3] [c]). Since the record evidences Piper's release into "family care", we discern no formal discharge for purposes of triggering the Statute of Limitations. We recognize that OMH was remiss in failing to periodically advise Piper of his "status and rights" as required by Mental Hygiene Law § 29.15 (c), but do not find that this omission transformed Piper's release into an actual discharge. Notably, respondent's final accounting indicates that Piper continued to maintain an account at the Elmira Psychiatric Center throughout the "family care" period.

■ ■ In sum, we find that the six-year limitations period governing OMH's claim for in-patient services rendered to Piper at Binghamton Psychiatric Center through December 31, 1972 did not begin to run until Piper's death in January 1986. It follows that OMH timely implemented its claim within the period fixed by former Mental Hygiene Law § 24 (8). This conclusion further dispels respondent's claim of laches *(see,* 36 NY Jur, Limitations and Laches, § 154, at 142 [1964]). Nor may we invoke an estoppel against OMH under the given circumstances *(see, Matter of Westledge Nursing Home v Axelrod,* 68 NY2d 862). We do find, however, that a remittal is appropriate to verify the accuracy of OMH's claim.

The record confirms that respondent preserved this issue in his opposing cross motion by questioning whether the Binghamton facility had or should have received reimbursement through public assistance. The issue should be explored to avoid the possibility of a double recovery. Respondent's remaining contentions are unavailing. We note that Supreme Court's ruling as to counsel fees was confined to "services and attorney fees *herein*" (emphasis supplied) and does not extend to counsel's efforts on appeal or further services on remittal. Finally, Supreme Court properly determined that OMH did not abandon its claim (cf., *Hickson v Gardner*, 134 AD2d 930, 931).

MIKOLL, YESAWICH, JR., MERCURE and HARVEY, JJ., concur.

Order entered September 21, 1987 modified, on the law, without costs, by reversing so much thereof as validated petitioner's claim in its entirety; matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.

Order entered September 24, 1987 affirmed, without costs.