**Marguerite T. O'CONNOR, as Administratrix of the goods, chattels and credits of Daniel J. O'Connor, deceased, Plaintiff,**

**v.**

**LEE HY PAVING CORP., and Davis E. Clem, Defendants.**

**No. 75 C 1853.**

United States District Court, E. D. New York.

Nov. 16, 1979.

Donald Miller, New York City (Norman E. Frowley, Calvin M. Tannenbaum and Fuchsberg & Fuchsberg, New York City, of counsel), for plaintiffs.

Lester Katz, New York City (Lester, Schwab, Katz & Dwyer, New York City, of counsel), for Fireman's Fund Ins. Co.

DOOLING, District Judge.

In this action under Estates, Powers and Trusts Law § 5–4.1 to recover for his immediate family's pecuniary injuries resulting from the death of Daniel J. O'Connor plaintiff recovered a judgment for $1,031,520 on July 13, 1979. The decedent's death had occurred in the course of his employment by Leonard Farber Company. Fireman's Fund Insurance Company (hereinafter "Fireman's") was Leonard Farber Company's workmen's compensation carrier, and it

paid the statutory benefits under the Workers' Compensation Law through August 22, 1979, aggregating $20,225; the statutory liability continues at the rate of $95 a week.

After judgment, plaintiff's counsel, aware of course of Fireman's lien on the recovery under Section 29 subdiv. 1 of the Workers' Compensation Law ("WCL"), wrote Fireman's requesting that its full lien (of $20,225) be applied to attorneys' fees since the disposition of the case would relieve Fireman's of liability for payments that, using life expectation tables, would exceed $150,000. Counsel cited *Castleberry v. Hudson Valley Asphalt Co.*, 97 Misc.2d 578, 412 N.Y.S.2d 89 (Orange County 1978). Fireman's answered by requesting full recovery for its lien less attorney fee as provided for in Section 29. Fireman's added that, "Payment of such fee does not constitute a reduction of our lien or consent to settlement." Plaintiff then moved, under WCL § 29 subdiv. 1, for an order vacating the compensation lien on the third party recovery (against Lee-Hy and Clem) and apportioning the lien for attorneys' fees incurred in effecting the recovery pursuant to Section 29 subdiv. 1. Counsel contends that Fireman's monetary benefits from the judgment far exceed the lien paid to date and that its share of the fees should be commensurate with the benefit it derived from the third party judgment. Counsel argues that the weekly benefit, extended over the minority of the youngest of decedent's three children and thereafter over the balance of his widow's expected life, will amount to $139,932. Adding the amount paid through August 29th, the total exposure of Fireman's has been a little over $160,000, it is argued, and from that it is further argued that apportioning to Fireman's a part of the fee equal to Fireman's payments to the date the matter is resolved is more than fair. The fee agreement provided for a fee of 27½%; with about $10,000 of disbursements, fee and disbursements could total about $291,000. See Estates, Powers and Trusts Law § 5-4.4(b).

Fireman's answers that the plain sense of the statutory language, its history and structure require the conclusion that the fee and disbursements be apportioned by deducting from the amount of Fireman's lien—the amounts paid out to date—a part of the total fee and disbursements determined by the ratio of the lien to the total recovery.

Section 29 subdiv. 1 preserves the insured injured workman's right to sue third party wrongdoers without making him elect to surrender statutory compensation, but he must sue within six months after compensation has been awarded. In such case, the compensation insurance carrier has a lien on the recovery (whether by judgment or settlement)

. . . after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery, *to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case* . . . and to such extent such recovery shall be deemed for the benefit of such . . . carrier. (Emphasis added.)

To step back, before 1937 Section 29 had required the workman to elect between compensation and a third party suit; if he took compensation, the award of compensation effected a statutory assignment of his third party claim to the carrier, and if he sued, the carrier then was required (as now under § 29 subdiv. 4) to "contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by this chapter for such case." See *Solomone v. Degnon Contracting Co.*, 194 App.Div. 735, 184 N.Y.S. 735 (3rd Dept. 1920) (quoting statute in concurring opinion). *Matter of Mundt v. Wm. Spencer & Sons*, 250 App.Div. 693, 295 N.Y.S. 888 (3rd Dept. 1937), modified in another respect, 276 N.Y. 677, 13 N.E.2d 57 (1938), made it clear that in computing the carrier's deficiency liability (where the third party recovery was less than the statutory liability) the credit to the carrier's deficiency liability for the third party recovery was not to be reduced by deducting the contin-

gent fee paid to the lawyer in the third party suit: the statutory beneficiary was treated as if he or she had received the whole recovery unreduced by the fee she had to pay to effect it.

In 1937 the election requirement was removed from Section 29; it was provided that the employee could both sue and take compensation, and it was then provided that the carrier would have the lien provided by the language quoted above.

In the law as first enacted, Section 29 had also provided that if the employee did not sue and the carrier did sue, the entire cause of action passed to the carrier; in a death case the surviving widow and children had no interest in the recovery even if it exceeded the carrier's payments. *Travelers' Ins. Co. v. Brass Goods Mfg. Co.*, 239 N.Y. 273, 146 N.E. 377 (1925). That was changed, in 1935, to provide that if in the carrier's suit it should

> . . . recover from such other, either by judgment, settlement or otherwise, a sum in excess of the total amount of compensation awarded to such injured employee or his dependents and the expenses for medical treatment paid by it, together with the reasonable and necessary expenditures, incurred in effecting such recovery, it shall forthwith pay to such injured employee or his dependents, as the case may be, two-thirds of such excess, and to the extent of two-thirds of any such excess such recovery shall be deemed for the benefit of such employee or his dependents.

When the compensation awarded requires periodical payments the number of which cannot be determined at the time of the award, the probable total amount is to be computed from the survivorship annuitants table of mortality and the remarriage tables for the purpose of computing the amount of the excess.

Following the 1937 changes, first the Appellate Division, *Hobbs v. Dairymen's League Cooperative Assn.*, 258 App.Div. 836, 15 N.Y.S.2d 695 (3rd Dept. 1939), and then the Court of Appeals, *Curtin v. City of New York*, 287 N.Y. 338, 39 N.E.2d 903 (1942), decided that the lawyer's fee should be deducted from the recovery from the third party in computing the carrier's credit against its deficiency liability. Referring to the new language in subdivision 1 of Section 29 providing for a deduction of the expense of recovery from the third party judgment in computing the carrier's subdivision 1 lien, the Court of Appeals said (*id.* at 343, 39 N.E.2d at 905):

> In that provision the Legislature has, in plain words, given recognition to the principle that where one person without fault incurs expenses in creating a fund which inures to the benefit of another, he should be reimbursed from that fund for the expenses so incurred. In the application of that principle, there is no ground for distinction between a case where recovery has been had by a claimant after he has made claim for statutory compensation and a case where the proceeds of a recovery have been collected before the claim is made.

That is, the attorney's fee deduction would increase the carrier's deficiency liability and diminish the fund over which its subdivision 1 lien extended.

The symmetry of treatment of the three deficiency situations—employee's suit recovering less than the compensation payments, computation of the deficiency of the carrier, and recovery by the carrier's suit of less than its total compensation liability—seems fair superficially. The cost of obtaining the recovery is deducted from it, and only the net recovery realized is used in the accounting between the parties. But it is a limited fairness, fair to the employee because in each situation his statutory rights are not diminished by phantom recoveries, fair to the carrier because the net recovery inures wholly to it and at least reduces its liability *pro tanto*.

Charging the cost of recovery against the recovery first before determining interests in the net recovery operated differently when the recovery exceeded the total statutory liability. If, for example, the employee sued and his gross recovery exceeded the total statutory liability by an amount exact-

ly equal to the attorney's fee plus his disbursements, the carrier received all, the employee nothing. If the carrier sued, and the recovery, after deducting legal costs, was exactly equal to the total statutory liability the employee received nothing. Fairness was under some strain, for the gross recovery might seem to signal that there were two persons interested in the recovery, and that the costs of recovery ought to be reflected in each dollar recovered. A sharper twist of unfairness appeared if the recovery either in the employee's suit or the carrier's greatly exceeded the carrier's total liability: the whole burden of effecting the recovery was borne by employee and in each case the carrier was saved harmless. Yet the loss which each sought to make good through the third party action was equally real, in the law's view, and there was no reason to tax one rather than other with the whole and undivided cost of the recovery in which both had a substantial interest. But the law before 1975 was too clear in treating the carrier's lien as a first and strict lien on the net recovery (after deducting counsel fees) for any judicial modification. *Koutrakos v. Long Island College Hospital*, 47 A.D.2d 500, 368 N.Y.S.2d 528 (2d Dept. 1975), aff'd, 39 N.Y.2d 1026, 387 N.Y.S.2d 247, 355 N.E.2d 301 (1976).

On the recommendation of the Law Revision Commission the Legislature in 1975 amended Section 29, subdivision 1, by interpolating immediately after the sentence first quoted above, two new sentences:

Should the employee or his dependents . . . secure a recovery from such other, whether by judgment, settlement or otherwise, such employee or dependents may apply on notice to such lienor to the court in which the third party action was instituted, or to a court of competent jurisdiction if no action was instituted, for an order apportioning the reasonable and necessary expenditures, including attorneys' fees, incurred in effecting such recovery. Such expenditures shall be equitably apportioned by the court between the employee or his dependents and the lienor.

The Law Revision Commission's language was expressly intended to avoid "rigid statutory formulas" for apportionment and to favor a simple provision for equitable apportionment by the court as being more "practical and flexible." See Recommendation of the Law Revision Commission, McKinney's 1975 Session Laws of New York, p. 1553 (reprinting 1975 Legis.Doc. No. 65(F)). After describing the Section 29 procedures as they existed before the recommended bill, the Commission said (*id.* at 1552):

Two results of this procedure call for a change in New York law. First, the carrier receives its lien without contributing to the cost of securing the recovery. Employees, encouraged to sue by the structure of the act, obtain a recovery from which the carrier benefits and yet the carrier need not share in the costs. When the carrier sues, its attorneys' fees are paid in full and then it receives the amount of its lien. The employee receives the excess, if any, only after the lien of the carrier's attorneys' fees has been discharged. Thus, the carrier's attorney's fees reduce the employee's excess recovery. Yet, when the employee sues, he normally bears the entire burden of attorney's fees. Second, when the excess is modest or non-existent, the employee, who has gone to the trouble and expended the time required to make the lawsuit a success, finds that after his own lawyer's and the carrier's liens have been paid off, there is little or no net recovery left for him. It was his lawyer's efforts that brought about the recovery out of which the carrier's subrogation lien is being paid in full, and yet the carrier is not making any contribution toward the legal expenses. The Commission believes that the present law is unfair to the employee and should be amended to provide for some apportionment of his legal expenses.

The Court of Appeals in *Becker v. Huss Co., Inc.*, 43 N.Y.2d 527, 402 N.Y.S.2d 980, 373 N.E.2d 1205 (1978), discussed the general approach to equitable apportionment under the statute, held that an apportionment could be reopened, on remand to the trial

court, "upon a showing that a rigid formula was improperly followed", but said:

> It does not follow, however, that standardized fees in personal injury cases should be ignored or that, except in the rare case, the lawyer's fees should be determined on *quantum meruit.* That would be unrealistic. Instead, so long as the court weighs variable and distinguishing factors, which might suggest departure from the retainer or standardized fees set by local custom or court rule, standardized fees may be used. Such factors might include the reasonableness of the lawyer's retainer and whether it was improperly influenced by the expectation that the lienor would be sharing in the burden of that fee, the fact that recovery was unusually simple or liability especially clear, and any other equitable circumstances. The practical advantage in limiting or even eliminating hearings on the applications is evident.

43 N.Y.2d at 543, 402 N.Y.S.2d at 986, 373 N.E.2d at 1211. The Court said that the ultimate determination of the equitable apportionment of legal expenses resided in the courts vested with the power of fact finding and the exercise of a sound discretion, and that it would be the unusual case in which principles involving questions of law remained for review that would go beyond the Appellate Division.

The first cases applying the 1975 amendment do not throw much light on the principles of apportionment that are in use.[1] In *Rice v. Bankers Trust Co.,* 83 Misc.2d 797, 374 N.Y.S.2d 87 (Kings Co. 1975), 40% of the fees were allocated to the carrier, but the basis of allocation was not explained.

In *Greenough v. Deblinger,* 84 Misc.2d 463, 376 N.Y.S.2d 869 (Queens Co. 1975), the lien was charged with a *pro rata* share of the legal expenses; it appears that the lien covered the whole of the carrier's liability. *Wargo v. Longo,* 85 Misc.2d 898, 380 N.Y. S.2d 1009 (Albany Co. 1976) similarly apportioned the legal expenses to the employee and to the carrier in proportion to their respective recoveries; again, the lien appears to have covered the whole of the carrier's liability. *Cardillo v. Long Island College Hospital,* 86 Misc.2d 438, 382 N.Y. S.2d 642 (Kings Co. 1976), is not clear on the rule of apportionment used. *Andrews v. Williams,* 89 Misc.2d 492, 391 N.Y.S.2d 780 (N.Y.Co.1976), apportioned the fee according to the sliding scale governing contingent fees in the first department, resulting in the allocation to the carrier of a slightly higher rate of charges than that borne by the employee. Again, the lien appeared to cover the whole of the carrier's statutory liability. *Sysler v. Helms Express,* N.Y.L.J. Feb. 19, 1976, p. 7, col. 2 (N.Y.Co.1976), was a case in which the carrier had evidently completed payment of the whole compensation award of $3,128.18 before the third party action was settled for $15,000. Plaintiff sought to have the carrier absorb the part of the total fee that fell within 50% and 40% brackets of the Appellate Division's contingent fee scale, arguing that the lien was the first money to be paid. The court, however, allocated the total fee between plaintiff and carrier in the proportion of their respective percentages of the total recovery.

The question of equitable apportionment has arisen under the compensation statutes of a number of states; the Law Revision Commission, indeed, referred to the existence of apportionment statutes in Delaware, Illinois, Indiana, Kansas, Maine, Maryland, Massachusetts, Michigan, New

---

1. Two of the cases included in the *Becker* appeal appear to have allocated the fee to the lien in the ratio that the lien bore to the total recovery: *Becker v. Huss Co., Inc.,* 55 App. Div.2d 854, 390 N.Y.S.2d 349 (4th Dept. 1976) ($10,000 verdict, $3,450 lien; fee to be "computed upon a contingent percentage basis of the amount received."); *France v. Abstract Title Division,* 57 App.Div.2d 721, 395 N.Y.S.2d 782 (4th Dept. 1977) ($350,000 verdict, benefit payments $13,086; court used ratio of lien to total recovery in apportioning fee as adjusted, but reduced carrier's share by 60% because of its liability as insurer of a codefendant to whom 60% of liability was assigned by the jury); the *Becker* decision was affirmed, the *France* decision reversed on the ground that the statute did not apply since the judgment had been entered in 1974.

Jersey, Pennsylvania, Virginia and Washington. A majority of the out-of-state cases dealing with apportionment under statutes providing for apportionment require allocation of legal expenses to the carrier in proportion to the total benefit realized from the third-party action, including both reimbursement of compensation benefits already paid to the employee and relief from future compensation liability. See Annot., 74 A.L.R.3d 854, 886–894 (1976); *Franges v. General Motors Corp.*, 404 Mich. 590, 274 N.W.2d 392, 400 (1979); *Anderson v. Twin City Lines*, 289 Minn. 11, 182 N.W.2d 193, 196 (1970); *Gillotte v. Omaha Public Power*, 189 Neb. 444, 203 N.W.2d 163, 168 (1973); *Owens v. C & R Waste Material*, 76 N.J. 584, 388 A.2d 977, 979 (1978); *Sheris v. Travelers Ins. Co.*, 491 F.2d 603, 606, 608 (4th Cir. 1974) (Virginia statute); cf. *Caruso v. Jackson Transportation Corp.*, 15 App.Div.2d 59, 222 N.Y.S.2d 298 (1st Dept. 1961) (New Jersey law: where wrongful death action settled after widow's death, attorney's fee applied only to compensation benefits paid: carrier's future liability extinguished by widow's death, not by recovery in third-party action).

*Castleberry v. Hudson Valley Asphalt Corp.*, 70 A.D.2d 228, 420 N.Y.S.2d 911 (2d Dept. 1979), reversing 97 Misc.2d 578, 412 N.Y.S.2d 89 (Orange Co. 1978), is the first case considering in detail the operation of the 1975 amendment: it decided that where the attorney's fee agreed on between the employee and his counsel was one third of the recovery, and the carrier had paid $20,402 in compensation to the date of settlement, the carrier should absorb $6,801 of the fee, one third of $20,402. But Castleberry's facts deny the case much of its value as a precedent. Castleberry settled his action during a second trial for $75,000 without obtaining the carrier's consent or a compromise order, as provided in Section 29, subdivision 5. Castleberry had been receiving compensation at the rate of $80 a week, and the payments aggregated $20,402 to the date of settlement. The attorney's fee was $25,000, which the trial court considered the standard retainer and reasona-

ble on the facts. The carrier agreed that, based on plaintiff's life expectancy, the probable total amount of its compensation obligation, calculated at $80 a week, exceeded $75,000. The trial court held that, since the full amount of the settlement inured to the carrier's benefit, it should bear the attorney's fees for the entire settlement, and the court vacated the entire lien. In modifying the trial court's award the appellate court observed that the Law Revision Commission chose a flexible approach over using a formula, such as applying to and deducting from the lien the percentage that the lawyer's fee was of the total recovery, and the court commented that the Commission did not intend to wipe the lien out. The court noted that where recovery in the third-party action fell short of the total liability, only the recovery net of legal expenses is credited in reduction of the liability. Here the settlement without carrier consent, the court pointed out, relieved the carrier of its deficiency liability. *Matter of Kusiak v. Commercial Union Assurance Co.*, 49 A.D.2d 122, 373 N.Y.S.2d 714 (4th Dept. 1975). The court reasoned that, had the settlement been consented to by the carrier, and the carrier been paid one third of its lien (that is, $6,802) as its share of the lawyer's fee, plaintiff would have had a substantial deficiency claim (under Section 29, subdivision 4) against the carrier if he lived for a further twenty years and if his compensation rate remained at $80 a week: that is, plaintiff would suffer no dilution by paying "that proportion of the attorney's fees which his 'share' of the recovery (*i. e.*, the total settlement less the compensation lien, if any) bears to the total recovery". Mr. Justice Shapiro (concurring in part and dissenting in part) differed in contending that—using the majority formulation—

> plaintiff would suffer no dilution by paying that proportion of the attorney's fees which his share of the recovery (*i. e.*, the total settlement less the sum of the compensation lien for payments to date and the carrier's potential compensation liability extinguished by the settlement) bears to the total recovery.

Mr. Justice Shapiro argued that the employee's recovery, taking the place of his statutory compensation, should not be diluted by the extra expense of legal fees—which would be true in almost every deficiency case if the carrier's share of the fee were limited to the retainer percentage applied to the sum of weekly payments made up to the date of settlement. Mr. Justice Shapiro invoked the out-of-state cases as illustrating the policy favoring using the sum of the carrier's extinguished future liability and past weekly payments as the carrier's allocating factor. However, he joined in finding the lower court's calculation incorrect because it failed to use in the carrier's allocating factor the present value of the future payments: the plaintiff's life expectancy had been stipulated at 20 years. (Present value of an annuity for about 20 years, on a six percent basis, is roughly 10½ times its annual value.)

The basic difficulty with *Castleberry* is that the court did not have the necessary data before it. The majority saw it as a deficiency case under Section 29, subdivision 4, and its hypothetical calculation overlooked the rule that subdivision 4 cases require the carrier to bear the whole cost of recovery in the reduction of its credit against its deficiency liability. See *Curtin v. City of New York, supra,* p. 718. That would have required a calculation of the period during which payments would be suspended, based on plaintiff's retaining $50,000 in addition to the $20,402 already received. In the suspension calculation, the carrier would not have been credited with the fees paid: the fact of their payment would not enter into the calculation, which would be based on the suspensive effect of the $50,000 that Castleberry "actually collected," in the language of subdivision 4. Mr. Justice Shapiro, however, does not exclude the possibility that the *Castleberry* case was a surplus or excess case. If the present value of the potential liability was only of the order of $43,700 rather than $83,200, the calculations would be very different: the carrier's interest in the recovery would be about $61,100, Castleberry's would be about $13,900, and the question would

be, should the attorney's fees be allocated, and, if so, how. Allocation to the employee is forbidden only in the deficiency case. Here, there would be no deficiency, but Castleberry would be allocated only about fourteen sixty-firsts of the fees.

The present case presents no subdivision 5 questions, and it is unlikely to be found to be a deficiency case. There does not appear to be any reason why in this case the allocation of fees should not conform to the relative interests of the parties in the outcome of the case. The carrier's interest includes not only the payments it has made but those which it is obligated to make: the statute itself visualizes making present determinations of future obligations; Section 29, subdivision 2 provides for the calculation of the probable amount of periodical payments the number of which cannot be determined at the time of the award; such calculations are inevitable in every deficiency case coming under subdivision 4; Section 27, subdivision 5 of the Act visualizes the making of such calculations.

The insistence on the use of the terms lien and lienor does not require limiting attention to payments already made. The lien is not so narrowly defined in Section 29, subdivision 1: the words are "lien on the proceeds of any recovery from such other . . . to the extent of the total amount of compensation *awarded* under or *provided* or estimated by this chapter for such case" (emphasis supplied). The lien is not for compensation paid but for the total awarded or provided. The carrier's lien, then, is an open ended lien, and is as extensive as the carrier's liability; if the third party recovery suspends or extinguishes that liability, then that is an advantage to the carrier produced by the action, just as real as is the carrier's claim to be reimbursed for its past compensation payments. See *Nakoneczua v. I. & L. Eisenberg,* 60 A.D.2d 403, 400 N.Y.S.2d 884 (3rd Dept. 1977).

Certainly no statutory foundation can be shown for the use of the amount of compensation paid to the date of judgment or settlement either as the allocation factor for determining the carrier's share of the expense of suit or as the limit on the amount to be allocated to the carrier. The

date of judgment or settlement is, in the real world of real cases, an absolutely random date wholly unrelated to any consideration having a rational bearing on the problem of equitable apportionment. The central determinants of equitable apportionment must be those in terms of which the statute functions, the total recovery and the total statutory liability of the carrier, paid and to be paid.

The rule of apportionment then, if the Fireman's accepts the fee arrangement between plaintiff and counsel as reasonable is to apportion to Fireman's the same proportion of the total fee and disbursements which the sum of its past payments and present liability for future payments bears to the total recovery inclusive of interest. That would not be precisely the amount plaintiff has calculated[2] since plaintiff has not used a present value figure. If counsel cannot agree on a calculation, they may make such further submissions as they think necessary.

It is so ORDERED.

---

2. For example, on a 6% table a thirteen year annuity of $4,940 a year would have a present value of about $39,500, and the present value of $75,712 thirteen years hence, *even if payable in one sum,* would be only about 52% of the capital sum.