OPINION OF THE COURT
Theodore S. Kasler, J.
The plaintiff in the above-entitled action moved at a Trial Term of this court for an order apportioning legal fees and expenses pursuant to subdivision 1 of section 29 of the Workers’ Compensation Law.
The action was originally commenced to recover for the wrongful death of the plaintiff’s decedent which occurred as a result of an industrial accident sustained while decedent was an employee of the third-party defendant, Consolidated Steel Erectors, Inc., which was performing construction work on a building at the defendant and third-party plaintiff, Chevrolet Tonawanda Division of General Motors Corporation. The general contractor was the third-party defendant, John W. Cowper Company. Defendant Belmont Iron Works loaded the steel trusses on a gondola car which, while being removed, fatally crushed the decedent employee. Defendant, Penn Central Transportation Company, owned and exercised control over the railroad car.
In 1970, a settlement was agreed upon for $165,000, requiring the defendant, Penn Central Transportation Company, to contribute $75,000 and the other defendants and third-party defendants to pay the balance. Due to the subsequent insolvency and bankruptcy judgment of Penn Central, it was unable to fulfill its obligation of the settlement. Consequently, the settlement was vacated.
In 1975, after trial, a jury returned a verdict against the defendant, Penn Central Transportation Company, in the amount of $390,000. Interest accruing on that amount was disallowed. The defendant, Belmont Iron Works, Inc., entered *803 into a settlement with the plaintiff for $15,000. This court, in an order granted May 4, 1979, approved the settlement and the judgment, totaling $405,000. Additionally, the court allowed plaintiff’s attorneys’ fees at 40% of the total recovery, in the amount $162,000. A workers’ compensation lien of $41,504.50 was awarded to Liberty Mutual Insurance Co. in satisfaction of the moneys paid to decedent’s wife and children under its obligation as the compensation carrier of the employer. The lien of paid money was divided into one portion consisting of $22,221.21 from which 40% of its contribution to plaintiff’s attorneys’ fees was subtracted. Forty per cent of its contribution to costs was also subtracted. The lien’s second portion of $19,283.29 was held in a joint savings account pending determination of whether the compensation carrier was required to make further contributions to attorneys’ fees incurred by the plaintiff, and for expenditures incurred in effecting the judgment and settlement.
Plaintiff’s attorney now moves this court to order the compensation carrier to contribute to plaintiff’s attorney fees and costs in an amount derived from both the amount of compensation already paid, and also the present value of future obligations the carrier would be obligated to pay had there been no third-party recovery. To make such a determination, the court is asked to find the present value of the amount the carrier would be liable for under an award provided by the Workers’ Compensation Law. The plaintiff’s attorney suggests what that amount and its present value should be.
The compensation carrier, Liberty Mutual Insurance Co., and the employer, Consolidated Steel Erectors, Inc., oppose the plaintiff’s attorneys’ request for relief. They contend that their reasonable contribution to the attorneys’ fees should only extend to compensation payments already made; that should the court require the carrier to contribute from an amount comprised of payments made and those estimated under a compensation award, the present value of that award is substantially less than suggested by plaintiff’s attorneys; and, that since the plaintiff’s action forced Liberty Mutual Insurance Co., as the employer’s insurer, to pay a sum to the plaintiff greater than the compensation payments returned to it, because the jury found it to-be approximately two-thirds negligent, it should not have to contribute at all towards paying for an attorney who brought it, in reality, no benefits.
Before discussing the merits of the above-mentioned argu *804 ments, this court chooses to affirm its award of attorneys’ fees in the ratio of 40% to the total award that was made a part of the order granted May 4, 1979. The plaintiff’s attorneys provided extraordinary legal services that were commensurate with the award. Those services were set forth in an affidavit of Eugene C. Tenney, Esq., sworn to April 24, 1979. The compensation carrier’s share of expenses was also properly apportioned at 40% of the benefits it received. This, too, was based upon the high quality and quantity of the legal services provided by the plaintiff’s attorney together with the complexity of the action. (Becker v Huss Co., 43 NY2d 527, 543.)
Turning to the central issue before this court of whether the compensation carrier’s share of expenses should be apportioned only from the payments paid to date, or from the total benefits received because of the action, the court determines that because the compensation carrier not only received its money paid, but was also saved from paying future payments, the compensation carrier received a benefit of that total amount and should pay attorneys’ fees apportioned from that amount. The court will not discuss the development of the compensation carrier’s obligation to share in the expenses of an action brought by the injured employee or his dependents against a negligent nonemployee, in which the carrier is entitled to receive back any moneys paid to the plaintiff as compensation. That has been done elsewhere. (Becker v Huss Co., 43 NY2d 527, supra; Matter of Curtin v City of New York, 287 NY 338; Castleberry v Hudson Val. Asphalt Corp., 70 AD2d 228; O’Connor v Lee Hy Paving Corp., 480 F Supp 716.) Suffice it to say that the compensation carrier must pay some cost for the benefit it receives from the plaintiff injured employee’s suit.
The few judicial decisions that have addressed this issue differ in their conclusions. The Castleberry case holds that the compensation carrier is limited in its contribution to plaintiff’s expenses to the amount of compensation paid to the date of judgment which it claims comprises the lien. This lien is allegedly the extent of its benefits received from the plaintiff’s action. However, the dissenting opinion holds to the contrary, in that the carrier’s expenses should be based on a combination of both the lien and the remainder of the compensation award it is saved from paying. The O’Connor case held essentially to the same point of view as the dissent in Castleberry. This court does not consider itself constrained by the majority *805 decision in Castleberry, and elects to follow the conclusion reached in O’Connor and the Castleberry dissent for the reasons to follow.
Of prime importance is the language of the statute for determining this issue. In the controlling statute subdivision 1 of section 29 of the Workers’ Compensation Law, the compensation carrier is given a lien from which plaintiffs expenses and attorneys’ fees are deducted. Significantly, the lien is comprised of total amount of compensation awarded or estimated, and for medical expenses paid or to be paid. The words of the statute do not limit the lien to amounts paid. Rather, it clearly states the lien, or the amount from which expenses are to be deducted, is to contain both the amount already paid and the unpaid portion of the award established under the compensation law. No more definitive explanation of the statute could be provided under such plain language. Again, there is no limitation that attorneys’ fees be deducted only from the amount already paid to the plaintiff.
The legislative intent in drafting this statute is also prominent in the court’s decision. Fairness to the employee was an overriding concern of the Legislature in creating an obligation for the compensation carrier to share legal expenses with the plaintiff (1975 McKinney’s Session Laws of New York, p 1551). This regard for the injured employee stems from what must be the meager compensation awards that are paid.
Professor Atleson states that compensation benefits are determined on a percentage of loss of earning capacity which the worker has suffered. There is no recovery for pain and suffering or other injuries that do not affect earning capacity. The benefits range from 50% to 80% of the normal weekly wage. To a large degree, the awards are inadequate. A result might be that the injured employee and his family will suffer destitution and want, and become dependent upon public assistance. (Atleson, Workmen’s Compensation: Third Party Actions and the Apportionment of Attorney’s Fees, 19 Buffalo L Rev 515.)
The action against the nonemployee tort-feasor alleviates much of this problem. As a corollary, should not the plaintiff in such action receive as much as he can to counterbalance the deficiency that the compensation award would leave him? The court believes that fairness to the employee would so dictate. A plaintiff employee should not be required to bear an unduly heavy share of attorneys’ fees and other expenses that *806 would substantially diminish his recovery when the compensation carrier receives a benefit from the action of not having to pay the remainder of an obligation while not contributing to the attorneys’ fees for this. If the carrier is allowed to bring an action against the tort-feasor for its total obligation to the injured employee, of which a good percentage will be estimated (Workers’ Compensation Law, § 29, subd 2), then surely when it receives the same benefits in an action brought by the injured employee or his dependents he must pay attorneys’ fees, there, also. The carrier is involved in both actions to the extent he receives similar benefits. In his own action, the carrier receives what he has paid and will pay; while in the other action, he will recover what he has paid and will essentially receive a credit against his future liability.
Since an attorney prosecuted the action, and recovered these benefits for the carrier, the carrier is obligated in both actions to pay attorneys’ fees. In either action, neither party wishes to diminish his award because of the attorney’s fee lien and may adjust its demanded recovery to account for it. Yet they are responsible for such lien and cannot be discharged from the obligation simply because the lien diminishes the recovery. The carrier may be able to recoup attorney fees in a subdivision 2 action, but not in a subdivision 1 action. However, this difference should not allow him to escape paying lawyer fees in the subdivision 1 action. While the carrier may receive one third of the excess recovery under a subdivision 2 action, but would not receive it under a subdivision 1 action, and nonetheless is forced to pay attorneys’ fees in both actions, the prime and intended beneficiary in either action of amounts recovered above what the carrier has paid and will pay is the injured employee (1975 McKinney’s Session Laws of New York, p 1552). Because of this, it should not be determinative of the issue here that the carrier receives a small windfall in one action and none in the other. The windfall is only an incentive for the carrier to sue for a large amount.
From these enumerated considerations of what will be fair to the employee, the expenses that the compensation carrier must contribute to should be deducted from the whole of the amount paid and that which it may be obligated to pay. The court finds this principle to be paramount to the holding of Castleberry (70 AD2d 228, supra), i.e., that the lien as represented by the amounts already paid is inviolable and should not be erased by attorneys’ fees that may just do that.
*807 No real problem is presented in determining the present liability for future payments under the court’s decision. Calculations of such obligations are anticipated in the Workers’ Compensation Law: "There does not appear to be any reason why in this case the allocation of fees should not conform to the relative interests of the parties in the outcome of the case. The carrier’s interest includes not only the payments it has made but those which it is obligated to make: the statute itself visualizes making present determinations of future obligations; Section 29, subdivision 2 provides for the calculation of the probable amount of periodical payments the number of which cannot be determined at the time of the award; such calculations are inevitable in every deficiency case coming under subdivision 4; Section 27, subdivision 5 of the Act visualizes the making of such calculations.” (O’Connor v Lee Hy Paving Corp., 480 F Supp 716, 722, supra.)
This court consulted a number of foreign State decisions that decided the same or similar issues. They, too, held that the compensation carrier’s contribution to attorneys’ fees should be based upon the amount of the payments made and its future liability. (Indiana State Highway Comm. v White, 259 Ind 690; Security Ins. Co. of Hartford v Norris, 439 SW2d 68 [Ky]; Crawley v Schick, 48 Mich App 728; Schalk v Michigan Sewer Constr. Co., 62 Mich App 658; Gillotte v Omaha Public Power Dist., 189 Neb 444; Wall v Conn Welding & Mach. Co., 197 Pa Super Ct 360; Teller v Major Sales, 64 NJ 143; Prettyman v Utah State Dept. of Fin., 27 Utah 2d 333; Owens v C & R Waste Material, 76 NJ 584.) These courts support their conclusions primarily on the basis of equity, fairness and justice. Some of these courts provide the following reasons, as restated in Castleberry v Hudson Val. Asphalt Corp. (70 AD2d 228, 249-250, supra): "if the insurer need pay fees only on the lien, it has an incentive to delay the payment of compensation to the employee; public policy should not encourage delay in the compensation payments * * * if the insurer need only pay fees on the lien, the injured employee has an incentive (a) to unnecessarily prolong his lawsuit against the third party, thus accumulating more compensation payments, and (b) to petition to the Workers’ Compensation Board for commutation of the periodical payments into a lump-sum payment pursuant to section 25 * * * and * * * workers’ compensation laws are remedial legislation, and therefore, borderline interpretations of the law should be *808 resolved in favor of those whom the legislation was intended to benefit.” Finally, one court (Indiana State Highway Comm, v White, supra), held that a plaintiff employee’s recovery should not be diluted solely by paying attorney fees for the collection of an amount that it would have received as the compensation award.
Therefore, the court finds that under subdivision 1 of section 29 where the carrier must contribute to the expenses incurred by the plaintiff employee or dependents, the lien from which it will be deducted shall be comprised of the moneys already paid and the present value of its future liability.
In calculating the amount from which the attorneys’ fees would be deducted, the court relies primarily on the amounts found in the affidavit of James D. Gauthier, Esq., attorney for the compensation carrier and third-party defendant employer, Consolidated Steel Erectors, Inc. To the amount already paid as of May 1, 1979, $41,504.50, the future liability must be added.
The decedent’s wife has a life expectancy of 33 years for which compensation would have been paid. For 195 weeks of those 33 years, the wife would receive compensation along with her two children that were under 18 years of age. The family would receive $5,115 for 93 weeks at the rate of $55 per week. At the expiration of that period, one of the children would reach the age of 18 years. The family of two would then receive $4,207.50 for 102 weeks, whereupon the other child would turn 18 years of age. The weekly rate for the preceding period would have been $41.25.
For the wife’s total life expectancy, there are $1,716, awarded each year at the rate of $33 each week. In multiplying that figure by 33 years, the total liability award to the wife would be $56,628. However, because the wife would not be receiving the $33 weekly Compensation for the 195 weeks from May 1, 1979 to February 20, 1983, the amount of $6,435 would be subtracted, leaving $50,193. But to that would be added the $9,322.50 that the family of three, then two, received for 195 weeks. The resulting future liability would have been $59,515.50.
In calculating the present value of that future liability, the court referred to the Financial Compound Interest and Annuity Table (5th ed). Using an interest rate of 6% per annum (12 NYCRR 392.2) for 33 years and applying it to the formula used for such calculations (Vn = 1/(1+i)n = 1/Sn; $59,515.50 *809 X .146186) the present value of $59,515.50 is $8,700.38. Therefore, the total benefit inuring to the compensation carrier comprising both the payments already paid and the present value of future liability saved is $50,204.88.
The compensation carrier’s contribution to the plaintiffs attorney fees shall be approximately 40% of the amount of the total benefit and shall consequently be deducted from it. The remainder of that sum shall be returned to the compensation carrier. The actual amount of attorneys’ fees that the compensation carrier is liable for is found by multiplying the total amount of attorneys’ fees and costs by the ratio of the total benefit to the total recovery ($50,204.88/$405,000 X $162,000 + $6,703.73; see Castleberry v Hudson Val. Asphalt Corp., 70 AD2d 228, 245, supra; O’Connor v Lee Hy Paving Corp., 480 F Supp 716, supra). The compensation carrier is liable for $20,244.45. Since this amount includes the carrier’s share of the costs, any prior payments by the carrier for costs pursuant to the order of this court, granted on May 4, 1976, shall be credited to this amount.
The court is not persuaded by the argument of the Liberty Mutual Insurance Company (herein called Liberty Mutual), as both compensation carrier and insurer for Consolidated Steel Erectors, Inc., that its contribution for plaintiffs attorneys’ fees be reduced because the deceased employee’s dependent (herein called plaintiffs), and Liberty Mutual were adverse parties. Since the employer was held partly liable in the third-party action and Liberty Mutual had to contribute to the plaintiffs recovery, the action brought by the plaintiffs did not fully benefit Liberty Mutual. Liberty Mutual argues that the detriment suffered by it brought about by the success of plaintiffs lawyers, should allow for a decrease in its contribution for the fees of such attorneys (France v Abstract Tit. Div. of Tit. Guar. Co., 57 AD2d 721, mod 43 NY2d 527; Myers v Cornell Univ., 97 Misc 2d 195).
Liberty Mutual fails to distinguish the separability of the compensation insurance fund and the liability insurance fund. They are quite distinct from one another. Their existence results from different purposes. Liberty Mutual’s coverage under each, the size of the funds, and the difference in premiums for each, reflect this difference. They cannot be equated as indistinct.
When Liberty Mutual is obligated for a compensation award, the liability fund is not affected, and vice versa. Only *810 in an action such as the one here do they indirectly affect each other. But this one instance should not blur those distinctions.
The recovery by the plaintiff in this action, through the efforts of his attorneys, did indeed confer a benefit upon Liberty Mutual’s compensation fund, as distinct from the liability fund. Liberty Mutual was repaid the compensation already awarded and was saved from making future payments. It would be inequitable for it not to contribute fully to those attorneys’ fees. Liberty Mutual suffered no reduction in its compensation fund. Consequently, no reduction will be made in regard to the contribution to attorneys’ fees previously determined.
Therefore, based on a determination that a compensation carrier benefits to the extent of a return of moneys paid and to the extent of present value of future liability saved from an action by an injured employee or dependents against a negligent nonemployee, it is hereby ordered that Liberty Mutual Insurance Company, as the compensation carrier, pay $20,244.45, as its equitable share of plaintiff’s attorneys’ fees in return for the benefit conferred upon it.