OPINION OF THE COURT
Marie M. Lambert, S.
In the within estate, the court by decree dated June 27, 1980 compromised an action for wrongful death and pain and suffering and settled the account of the administratrix. Specifically reserved for determination was the claim of the State Insurance Fund (SIF) that its lien for the payment of workers’ compensation benefits should be recouped in full and should not be reduced by any share of the attorneys’ fees and costs incurred in the prosecution of the tort action which gave rise to the recoupment. Should this court find that apportionment of attorneys’ fees and costs is appropriate, SIF argues that it should pay a lesser share of fees and costs because it was both the workers’ compensation carrier and the general liability insurer and was liable to plaintiff in the tort action. The amount of the reduction which SIF asks for is the percentage of the judgment which it had to pay as insurer for the tort-feasor in the tort action. *357 This concept, established in France v Abstract Tit. Div. of Tit. Guar. Co. (57 AD2d 721, mod 43 NY2d 527), provides that where the workers’ compensation carrier is also the general liability insurer, the lienor’s proportionate share of the legal expenses should be reduced to reflect the fact that the recovery in the tort action is adverse to the interest of lienor.
In opposition to this claim, the administratrix states that the 1975 amendments to subdivision 1 of section 29 of the Workers’ Compensation Law (L 1975, ch 190), require the equitable apportionment of legal expenses between a plaintiff and a compensation carrier and that the carrier is statutorily mandated to pay a proportionate share of the legal expenses attributable to its recovery. The administratrix further states that the France doctrine undercuts the statutory scheme of equitable apportionment by allowing a compensation carrier, where it is also the . general liability insurer, to pay less than a proportionate share of the legal expenses. Finally, she argues that the proportionate share of legal expenses which a compensation carrier should pay should be calculated to include not just the amount of the lien actually recouped, but the benefits to the carrier which result from the termination of its obligation to pay any future compensation benefits. This concept, called the “total benefit theory” has been recently accepted by several courts. (O’Connor v Lee Hy Paving Corp., 480 F Supp 716; Cox v Belmont Iron Works, 104 Misc 2d 801).
The underlying tort action which engendered the issues sub judice involved the death of a sheetmetal worker who was electrocuted while using a hand held power drill. The decedent was survived by a wife who was 29 years old at the time of his death and a son who was born posthumously. An action was commenced against the City of New York, the general contractor for the construction project, and several other prime contractors. One of those prime contractors, M. C. Electric Co. (Electric), impleaded the decedent’s employer, Contractors Sheetmetal Co. (Contractors), as a third-party defendant and the city cross-claimed against the employer. After a jury verdict, the city was found 65% liable, Electric was found 35% liable and Contractors was found not liable. After a reduction in the *358 amount of the verdict by the Trial Judge from $550,000 to $315,000, an appeal was taken to the Appellate Division where a new trial with respect to apportionment was directed unless Contractors consented to the imposition on it of 32 Yz% liability (Kelly v M. C. Elec. Co., 68 AD2d 657). Contractors did so consent, and SIF, as its general liability carrier, was ultimately liable for that amount.
During the course of the lawsuit, SIF paid workers’ compensation benefits to the administratrix and her son in an amount in excess of $30,000. The compensation benefits were paid on a periodic basis and. were continued until June 30, 1980. Upon application to this court for the settlement of the causes of action, the account of the administratrix was settled and a reserve fund was established in an amount sufficient to cover the claim of SIF for the recoupment of its lien and sufficient to pay the fee of the guardian ad litem appointed to represent the infant son of the decedent. Said guardian ad litem has reviewed the issues raised in this proceeding and he concurs with the position taken by the administratrix. The court has been informed by letter dated March 20, 1981 that the parties wish to have the outstanding issues resolved on the basis of papers submitted to it.
With regard to the outstanding issues, the court finds no merit to the contention of SIF that its lien for compensation benefits should be recouped in full and should not be reduced by a proportionate share of the legal expenses incurred in the tort action which resulted in its recoupment.
Prior to 1975, subdivision 1 of section 29 of the Workers’ Compensation Law did not require a compensation carrier who had a lien against a third-party recovery for compensation benefits paid, to pay a proportionate share of the reasonable and necessary expenditures, including attorneys’ fees, incurred in the litigation which resulted in an excess recovery and in the recoupment of the lien. In other words, where the plaintiff received an excess recovery, the compensation carrier received a “free ride” by having its lien paid in full without regard to the costs incurred in bringing the action. The failure to apportion expenses was even more inequitable when subdivision 2 of section 29 of *359 the same act was considered. That provision allowed the carrier to take an assignment of the causes of action when the plaintiff, after notice by the carrier, failed to commence an action in an appropriate time period. Subdivision 2 of section 29 of the Workers’ Compensation Law further provided that, if the carrier achieved an excess recovery, that is, an amount which exceeded any lien for compensation awarded or medical expenses paid, the carrier could keep one third of the excess as a windfall. Importantly, the attorneys’ fees incurred as a result of the carrier’s litigation were treated as a prior lien and were deducted from the recovery before the compensation lien was satisfied and before the amount of the excess recovery was determined. Thus, section 29 of the Workers’ Compensation Law contained a dual standard with respect to apportionment of attorneys’ fees. When a plaintiff, under subdivision 1 of section 29 commenced an action, the lien of the compensation carrier, without regard to apportionment of attorneys’ fees, was deducted in full after the recovery. When a compensation carrier under subdivision 2 of section 29 commenced an action, the attorneys’ fees were first deducted before the compensation lien was satisfied in full and before the amount of any excess recovery was determined.
This double standard was recognized by the Law Revision Commission. (Recommendation of the NY Law Revision Comm to the 1975 Legis, McKinney’s 1975 Session Laws of NY, pp 1551, 1552), which described it as follows: “Two results of this procedure call for a change in New York law. First, the carrier receives its lien without contributing to the cost of securing the recovery. Employees, encouraged to sue by the structure of the act, obtain a recovery from which the carrier benefits and yet the carrier need not share in the costs. When the carrier sues, its attorneys’ fees are paid in full and then it receives the amount of its lien. The employee receives the excess, if any, only after the lien of the carrier’s attorneys’ fees has been discharged. Thus, the carrier’s attorney’s fees reduce the employee’s excess recovery. Yet, when the employee sues, he normally bears the entire burden of attorney’s fees.” The same Law Revision Commission had a second reason *360 for being disturbed. As a result of the dual standard of apportionment they found that: “when the excess is modest or non-existent, the employee, who has gone to the trouble and expended the time required to make the lawsuit a success, finds that after his own lawyer’s and the carrier’s liens have been paid off, there is little or no net recovery left for him. It was his lawyer’s efforts that brought about the recovery out of which the carrier’s subrogation lien is being paid in full, and yet the carrier is not making any contribution toward the legal expenses. The Commission believes that the present law is unfair to the employee and should be amended to provide for some apportionment of his legal expenses.” (Ibid.) In light of the above criticisms, the Legislature amended subdivision 1 of section 29 of the Workers’ Compensation Law to provide for the equitable apportionment of legal expenses between plaintiffs in third-party actions and compensation lienors.
In arguing that subdivision 1 of section 29 does not now require apportionment against its lien, SIF points to a host of Federal cases decided under the Longshoremen’s and Harbor Workers’ Compensation Act (US Code, tit 33, § 901 et seq.). That act contains no explicit statutory requirement that the compensation carrier and the compensation beneficiary share the burden of legal expenses incurred in obtaining a third-party recovery against a vessel even if the recovery inured to the benefit of both the beneficiary and the compensation carrier. Even though the statute was silent as to apportionment, Federal courts, by the exercise of their equitable powers, fashioned a theory known as the “common fund” doctrine, which provided that a lawyer who creates a fund for the benefit of another is entitled to reasonable compensation from the other for his efforts. (See Ann., 46 ALB, Fed 692, 698.) This doctrine was given credence by the Fourth and Fifth Circuit Courts of Appeal and in part by the Second Circuit, until struck down in 1980 by the Supreme Court in Bloomer v Liberty Mut. Ins. Co. (445 US 74). In Bloomer, the court held that the equitable fund doctrine was not in accord with the language, structure and history of the Longshoremen’s and Harbor Workers’ Compensation Act. Elaborating on this, the court stated the following (supra, at p 85): “In light of *361 the Act and its legislative history, however, we are unable to accept petitioner’s argument. It is of course true that the stevedore and longshoreman now have a common interest in the longshoreman’s recovery against the shipowner, but it does not follow that the stevedore should be required to pay a share of the longshoreman’s legal expenses. Congress has not modified 33 U.S.C. § 933(e), providing that the stevedore is not required to pay its legal expenses in cases in which it has recovered against the shipowner pursuant to an assignment from the longshoreman. Moreover, in 1972 Congress was informed of, but did not alter, the uniform rule that the longshoreman’s legal fees would be paid by the longshoreman alone. In these circumstances we are reluctant to take steps to change that rule on our own. See Edmonds v. Compagnie Generale Transatlantique, 443 U.S., at 273.” (Emphasis added.)
From the above, it is clear that those Federal cases which refuse to apportion legal expenses have done so because of the circumstances associated with the Longshoremen’s and Harbor Workers’ Compensation Act. As such, they offer neither mandatory nor persuasive authority with respect to the issues sub judice. Unlike our Federal counterparts, the courts of this State have not had to engage in a tortured exegesis to discern a legislative intent. That intent has been given to the courts when the Legislature required them to equitably apportion legal expenses between plaintiffs and lienors. The only questions which arise in this court’s mind concern where to strike the balance on equitable apportionment. Specifically, the court must determine whether full apportionment is appropriate where the compensation carrier is also the liability insurer and whether equitable apportionment should take into account future benefit payments which the compensation carrier will not have to make by virtue of the third-party recovery.
In France v Abstract Tit. Div. of Tit. Guar. (57 AD2d 721, supra) the Appellate Division, Fourth Department, was asked to determine whether the compensation carrier who was also the liability insurer, was entitled to a reduction in the attorneys’ fees and costs apportioned against its lien because it was required as liability insurer to pay 60% of *362 the tort recovery. The reduction sought was 60%, or the same percentage for which the carrier, as insurer, was ultimately liable. In granting the reduction, the court argued that the plaintiff’s efforts, to the extent that he recovered against the carrier as an insurer, were adverse to the lienor’s interest.
This line of reasoning was followed in Myers v Cornell Univ. (97 Misc 2d 195, 197) which states that “the France case *** stands as authority for the proposition that in an action where the interests of the plaintiff and the employer — as distinct from the main defendant — are adverse, the fees chargeable to the compensation lien must be adjusted accordingly.”
The Myers court, unlike the one in France, went beyond the mere statement of the rule and offered a rationale for this approach. The court stated that the 1975 amendments to subdivision 1 of section 29 of the Workers’ Compensation Law would be fair and equitable if it were not for the line of cases resulting in Dole v Dow Chem. Co. (30 NY2d 143), which allowed defendants in a main action to seek contribution against a plaintiff’s employer. By allowing contribution pursuant to Dole (supra), or by way of third-party indemnity, “The defendant employer was an adverse party to the plaintiff and a recovery against the employer was necessarily paid, in whole or in part, by the same company which was entitled to repayment of its workmen’s compensation lien.” (97 Misc 2d, supra, at p 198.)
While this line of reasoning has a surface appeal, closer scrutiny leads to a different conclusion. First, the contribution as required by Dole and its forerunners was established several years prior to the 1975 amendments to subdivision 1 of section 29 of the Workers’ Compensation Law. After conspicuously drafting a provision which requires the equitable apportionment of legal expenses, the Legislature rested. It specifically failed to engraft an exception to the apportionment provision which would have required a reduction in apportionment where the compensation carrier is also the general liability insurer. Clearly, the Legislature knew that the courts of this State were requiring contribution from employers and that the compensation carrier was also acting as liability insurer. In *363 fact, the Legislature, when it created SIF, statutorily authorized it to provide liability coverage to an employer to whom it was providing workmen’s compensation coverage. (See Workers’ Compensation Law, § 76.)
Second, the interests of the lienor and that of the plaintiff are not as adverse as SIF contends. It bears pointing out that an employee is precluded by statute from suing his employer. Any obligation on the part of the employer to contribute is derived by the circuitous route of having a main party defendant implead the employer for contribution under Dole. The compensation beneficiary has no control over who is impleaded and the fact that an employer is ultimately found liable should not, by that happenstance, reduce the apportionment of legal expenses. It is not the plaintiff’s fault that the compensation carrier is also the employer’s liability insurer.
Third, the picture of the compensation carrier as having one hand in two pockets is anatomically impossible. Both the compensation insurance fund and the liability insurance fund are separate and distinct. Both charge different premiums, have different purposes, and provide different coverage. Whereas the premium charged for compensation coverage is based on considerations which include the wages paid to the employee, the premium charged for liability coverage is based on the potential exposure of the carrier to tort recoveries. Whereas the liability of the compensation carrier is delimited by a fixed schedule of payments determined in accordance with the various provisions of the Workers’ Compensation Law, the liability of the carrier as general insurer is as great as the principles of tort law would allow.
Fourth, the effect of the France doctrine works counter to the view that fairness to the employee was an overriding concern when the Legislature amended subdivision 1 of section 29 of the Workmen’s Compensation Law to provide for equitable apportionment. (See Cox v Belmont Iron Works, 104 Misc 2d 801, supra.) That concern sought to design a system which was not straitjacketed by rigid formulae and which was flexible enough to accommodate the consequences of an industrially caused injury. (See Becker v Huss Co., 43 NY2d 527, 542.) That concern *364 resulted in a system which took into account the modern belief that “the costs of industrial accidents are expenses to be borne by the industrial enterprise and not by the injured workman.” (See dissenting opn in Bloomer v Liberty Mut. Ins. Co., 445 US 74, 89, supra.) For the foregoing reasons, the court believes that the France doctrine should not be adopted by this department and that a compensation carrier should not have his proportionate share of legal expenses reduced because it also happens to be liable as a general insurer.
Finally, this court has been asked to determine whether a compensation carrier’s lien, already reduced by the share of legal expenses attributable to the recoupment of the lien, should be further reduced to reflect the fact that the carrier has incurred a benefit by having its future support obligations terminated. This concept, known as the “total benefit theory”, holds that the recoupment of a lien by the compensation carrier for compensation previously paid, does not represent the total benefit which the carrier derives from the recovery. A necessary component of that total benefit includes consideration of the value to the carrier of not having to pay compensation in futuro. This theory is legally based on the premise that subdivision 1 of section 29 of the Workers’ Compensation Law does not specifically limit a lien to compensation previously paid and, in fact, calculates the lien on the basis of compensation “provided or estimated by this chapter”. Under subdivision 2 of section 29 of the Workers’ Compensation Law the provision which assigns a cause of action to a carrier if a plaintiff has failed to bring suit, the calculation of the estimated compensation .is based on the survivorship annuitants table of mortality, the remarriage tables of the Dutch Royal Insurance Institution and such facts as deemed pertinent. This theory was rejected in Castleberry v Hudson Val. Asphalt Corp. (70 AD2d 228), but has recent judicial expression in O’Connor v Lee Hy Paving Corp. (480 F Supp 716, supra) and Cox v Belmont Iron Works (104 Misc 2d 801, supra).
In O’Connor v Lee Hy Paving Corp. (supra) the court was asked to consider whether the lien of the compensation carrier should be reduced to take into account the future *365 benefits which it was saved from paying. In O’Connor, the judgment in the tort action was in excess of $1,000,000 and the compensation carrier had paid $20,225. Computed over the course of the widow’s expected life and the minority of the decedent’s three children, the carrier would have had to pay an additional $139,932 in compensation benefits. In finding that equitable apportionment should take into account the total benefit received by the carrier, Judge Dooling pointed to subdivision 1 of section 29 of the Workers’ Compensation Law which defines the word “lien” broadly to include compensation “awarded under or provided or estimated by this chapter for such case”. In his own words (supra, p 722), the “carrier’s lien, then, is an open ended lien, and is as extensive as the carrier’s liability; if the third party recovery suspends or extinguishes that liability, then that is an advantage to the carrier produced by the action, just as real as is the carrier’s claim to be reimbursed for its past compensation payments. See Nakoneczua v. I. & L. Eisenberg, 60 A.D.2d 403, 400 N.Y.S.2d 884 (3rd Dept. 1977).”
In his decision, Judge Dooling spent much time analyzing contrary case law, especially Castleberry v Hudson Val. Asphalt Corp. (supra). In Castleberry, the Appellate Division, Second Department, was asked to determine whether Special Term was correct in extinguishing a compensation lien for $20,402 where a tort recovery of $75,000 had been achieved without the consent of the carrier. The court calculated that the value of the compensation lien, both past and future, was $103,602 and that the carrier, if it had consented to the recovery, would have been liable to the plaintiff for deficiency payments in the sum of $46,801. This figure was derived at by deducting the amount of the recovery “actually collected” from the total potential benefits. In calculating the amount “actually collected”, the court deducted a share of the legal expenses attributable to the recoupment of the lien for compensation previously paid. The Castleberry court viewed the legal question before it as follows (70 AD2d 228, 229-230, supra): “[W]hether the compensation insurance carrier should ordinarily contribute only in proportion to its actual benefit derived from the recovery (i.e., the satisfaction of its lien) *366 or whether attorneys’ fees should be assessed against it not only for the ‘collection’ of its lien but also upon the theory that the employee’s portion of the recovery inures to its benefit by diminishing or extinguishing its liability for future payments to the employee.” In holding that the contribution was limited to actual benefit derived, the court was guided by the belief that it was dealing with a deficiency judgment case and that where a deficiency recovery exists, the carrier, under subdivision 4 of section 29 of the Workers’ Compensation Law must contribute the difference between the amount of the recovery as actually collected and the compensation provided or estimated. The amount of the recovery actually collected should be net of all legal expenses.
In O’Connor, Judge Dooling noted that the Castleberry court did not have all the necessary data before it and felt that this fact, inter alia, gives the decision little precedential impact. For one, he notes that the majority in Castle-berry treated its case as a deficiency one. In a dissent by Justice Shapiro, it was pointed out that if the present value of potential liability of the carrier was calculated, the carrier’s interest in the recovery would be reduced and an excess would exist. Second, he notes that the court overlooked the prescription of subdivision 4 of section 29 of the Workers’ Compensation Law that a carrier bear the whole cost of recovery in the reduction of the credit against its deficiency liability. (480 F Supp, supra, p 722.) That, he avers, would have required a calculation of the period during which payments would be suspended, based on the plaintiff retaining the net sum of the recovery in addition to the compensation amount already received.
“In the suspension calculation, the carrier would not have been credited with the fees paid: the fact of their payment would not enter into the calculation, which would be based on the suspensive effect of the $50,000 that Castleberry ‘actually collected,’ in the language of subdivision 4.” (O’Connor v Lee Hy Paving Corp., 480 F Supp 716, 722, supra.)
For the above reasons and his conclusion that the equitable apportionment statute allows for the inclusion of future *367 benefit payments, Judge Dooling ruled that future payments should be included.
In Cox v Belmont Iron Works (104 Misc 2d 801, supra), the same issue was presented to the Supreme Court, Erie County. In that case, $405,000 was recovered by way of settlement and a workers’ compensation lien of $41,504.50 was awarded in satisfaction of benefits paid to the decedent’s wife and children. The attorney for plaintiff asked the court to order the carrier to contribute to the legal expenses and that said contribution should be from an amount derived from both the amount of compensation already paid and “the present value of future obligations the carrier would be obligated to pay had there been no third-party recovery.” (Supra, p 803.) The court elected to follow O’Connor, rather than Castleberry, and did so on the prime importance it placed on the language of subdivision 1 of section 29 of the Workers’ Compensation Law.
The court found that the statute does not limit the lien to amounts paid and, in fact, clearly states that “the amount from which expenses are to be deducted, is to contain both the amount already paid and the unpaid portion of the award established under the compensation law.” (Supra, p 805.) To further buttress its argument, the court noted that the primary legislative intent in drafting the statute was fairness to the employee (McKinney’s 1975 Session Laws of NY, p 1551). Such a regard developed, inter alia, from the fact that compensation awards were quite meager and were determined without regard to general tort principles.
For all of the above reasons as delineated in O’Connor and Cox, the court finds that a calculation of the lien which SIF has in this case should take into account the benefit that SIF derived from not having to pay future compensation. As noted previously, modern concepts provide that the costs of industrial accidents should be borne by the industrial enterprise rather than the injured workman. That concept is no less applicable here.
Finally, SIF has raised an objection to the jurisdiction of this court to decide the question of whether future benefits to the carrier should be considered when determining the equitable apportionment of the legal expenses.
*368 An objection by SIF to this court’s jurisdiction to entertain the petitioner’s future benefits theory must be disregarded for this court has full jurisdiction to provide for the settlement of the petitioner’s account and determine the amount of SIF’s lien. (Powers, Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, SCPA 1809, p 152.)
Submit order on notice with the fee of the guardian ad litem to be fixed and the calculation of the lien, with interest, to be determined in accordance with the guidelines enumerated herein.