OPINION OF THE COURT
Harold Hyman, J.
In this application by petitioner, John Di Meglio, for an order equitably apportioning such expenditures and attorney’s fees incurred in effecting his third-party recovery pursuant to subdivision 1 of section 29 of the Workers’ Compensation Law, the issue to be determined is whether the compensation carrier’s release , from future liability effected by the employee’s successful prosecution of the underlying tort action constitutes a benefit upon which the apportionment of attorney’s fees may be based.
Petitioner had been injured in the course of his employment on February 11, 1979 and was receiving weekly payments from his employer’s compensation carrier in the sum of $105 per week. Subsequently, he brought a third-party action for personal injuries, which after seven days of trial was settled before this court on May 18, 1982 for $312,500. The amount of compensation payments aggregated $22,090.85 to the date of settlement, i.e., workers’ *192 compensation and medical benefits actually received by petitioner.[1] Based upon the sliding scale retainer agreement approved by the Appellate Division, the attorney’s fee amounted to $80,528.07 plus disbursements of $1,387.74.
The petitioner urges that this court, in exercising its discretion in apportioning the attorney’s fee and expenditures between the employee and the lienor, adopt the “total benefit theory”, which concept holds that a necessary component of the total benefit which the carrier derives from the third-party recovery includes consideration of the value to the carrier in having its liability for future payments to the employee extinguished.[2] Applying these facts and the so-called total benefit theory to the accepted formula for computing the carrier’s share of the attorney’s fees (i.e., multiplying the amount of the total legal fees by the ratio of the lien to the total recovery [Wargo v Longo, 85 Misc 2d 898]), the portion of the attorney’s fees and disbursements to be borne by the carrier is calculated as follows:
Total Settlement .................... $312,500.00
Compensation Benefits Actually paid
(lien as of May 18, 1982) ............ 22,090.85
Estimated Future Compensation Benefits of $202,860 — discounted to Present
Value ................................ 45,077.00
Total Benefits (past and future) .. 67,167.85
Compensation Carrier’s Share of Attorney’s
Fees or 21.5% x 81,915.81 = 17,611.90 312,500.00
*193 Under the theory espoused by the petitioner, therefore, 21.5% of the attorney’s fees would be apportioned against the carrier, leaving a balance of $4,478.95 to be recouped by the carrier from the settlement proceeds.
Petitioner contends that the carrier’s monetary benefits from the judgment far exceed the lien paid to date and that its share of the fees should be commensurate with the benefit it derived from the third-party judgment. If the third-party action had not been prosecuted, resulting in a settlement of $312,500, argues petitioner, the carrier would have been confronted with paying out $202,860 rather than the meagre share of $17,611.90 of the attorney’s fees incurred in effecting recovery.
In opposition to petitioner’s position, the respondent carrier avers that its proportionate share of the attorney’s fees and expenses should be limited to the workers’ compensation and medical benefits actually paid to the employee up to the time of the third-party settlement or judgment. In the carrier’s view, the inclusion of potential future benefits in this calculation runs contrary to the express language of subdivision 1 of section 29 of the Workers’ Compensation Law, as amended in 1975, and the purposes for its adoption by the Legislature. This view would translate into a 7% share of the attorney’s fees apportioned against the carrier, or $5,734.11, a sum less than one third the compensation lien.
Faced with the choice of providing for a fixed statutory formula or a more flexible “equitable” apportionment, the Legislature opted for the latter approach, based largely upon the recommendation of the Law Revision Commission. (See Recommendation of Law Revision Comm to Legislature, McKinney’s Session Laws of NY, 1974, pp 1904-1906.) However well intentioned this open-ended approach was, or the precedent for its adoption, the trial courts were put in the unenviable position of establishing the proper standards to be applied in apportionment and the relative benefits upon which the apportionment was to be based.
The first case to consider the operation of the apportionment provision was decided by the Appellate Division, Second Department, in Castleberry v Hudson Val. Asphalt *194 Corp. (70 AD2d 228). In Castleberry, the plaintiff settled his third-party action against the defendant for $75,000 without obtaining the carrier’s consent or a compromise order, as provided in subdivision 5 of section 29 of the Workers’ Compensation Law. The compensation payments to plaintiff aggregated $20,402 to the date of settlement. The reasonable attorney’s fees were found to be $25,000. Based on plaintiff’s life expectancy and his $80 per week rate of compensation, the carrier conceded that the probable total amount of its compensation obligation would have exceeded $100,000. Plaintiff argued and the trial court agreed that, since the full amount of the settlement inured to the carrier’s benefit, it should absorb all the attorney’s fees, thereby extinguishing the entire lien.
Because the statutory lien of the carrier was compromised completely, the Appellate Division reversed, observing that the Law Revision Commission did not intend to wipe the lien out. In construing the apportionment provision, the appellate court held that the compensation carrier should contribute to the payment of attorney’s fees and expenses only in proportion to the actual benefit it derives from the recovery in satisfying its outstanding lien.
Whatever its theoretical underpinning, the majority in Castleberry drew its justification for repudiating the total benefit theory from its treatment of the case as a deficiency judgment case (Workers’ Compensation Law, § 29, subd 4) described by the court as one “where the employee’s recovery is less than ‘the sum of lien plus the estimated liability of the carrier extinguished by the recovery’.” (Castleberry v Hudson Val. Asphalt Corp., supra, p 235.) Under subdivision 4 of section 29 of the Workers’ Compensation Law, the compensation carrier is obliged to cover “the deficiency, if any, between the amount of the [third-party] recovery * * * actually collected, and the compensation provided or estimated by this chapter for such case.” (Emphasis added.) The use of the term “actually collected” refers to the employee’s net recovery — i.e., the total recovery less the expenses reasonably and necessarily incurred in obtaining the recovery (Matter of Curtin v City of New York, 287 NY 338).
*195 As the attorney’s fees in the settlement ($25,000) were one third of the recovery, the Castleberry majority allocated as the carrier’s equitable share of attorney’s fees the equivalent of one third of the amount of its lien ($6,801). The appellate court then reduced the total settlement ($75,000) by the injured employee’s “share” of the recovery (i.e., the total settlement less both the full attorney’s fees plus the compensation carrier’s lien [after set off of one third of the compensation previously paid ($20,402) representing the carrier’s share of the attorney’s fees]) to arrive at the amount “actually collected” ($36,399).
$75,000 - ($25,000 + $13,601) = $36,399
The court calculated that the value of the compensation lien, both past and future, was $103,602 and that the carrier, if it had consented to the recovery,[3] would have been liable to the plaintiff for deficiency payments in the sum of $46,801.
$103,602 - ($20,402 + $36,399) = $46,801
In essence, these mathematical calculations were intended to substantiate the majority’s view that the injured employee would suffer no dilution, as claimed in the minority opinion, by paying “that proportion of the attorneys’ fees which his ‘share’ of the recovery (i.e., the total settlement less the compensation lien, if any) bears to the total recovery.” (Castleberry v Hudson Val. Asphalt Corp., supra, p 238.) On the other hand, argued the majority, adoption of the approach taken by Special Term, and espoused in the dissent, would result in the effective destruction of the carrier’s rightful lien.
Compelling as this rationale might have been, it is the opinion of this court that the majority in Castleberry may have been overly influenced by the so-called “inviolable” nature of the carrier’s lien, and misconstrued the true effect of the so-called equalizing factor supplied by the “deficiency” provision contained in the statute. This view *196 was precisely expressed in a law review analysis of the Castleberry decision:
“It is submitted that the Castleberry court’s refusal to extinguish the carrier’s lien to the extent of his liability for deficiency payments overemphasizes the importance of the lien in maintaining the viability of the compensation scheme. Assuming compliance with the statutory notice requirements, when the third party recovery is less than the carrier’s future liability plus its lien, the apportionment provision does not affect the amount of the benefits ultimately to be paid to the employee.[307] In such a case, the carrier remains liable for deficiency payments to the extent that its future obligation under the compensation claim exceeds the employee’s net recovery from the third party action. Hence, where 'the third party recovery does not discharge the carrier’s future obligation, an apportionment of costs such as that granted by special term affects the timing but not the amount of the carrier’s aggregate liability.[309] Such a result cannot logically be viewed as imperiling the integrity of the compensation scheme.
“By incorrectly assessing the implications of imposing most, if not all, of the litigation expenses upon the carrier in a Castleberry situation, it is suggested that the majority reached a result inconsistent with the policy of encouraging employees to pursue their claims against third party tortfeasors.[311] Since the potential for an earlier realization of his benefits operates as an inducement to the employee to seek such a recovery, an incentive enhanced by the recent amendment to Section 29(1), it appears incongruous to reject an apportionment which depletes the employee’s share of the judgment but then allows him to recoup the costs assessed against him in the form of periodic future payments from the carrier.” (54 St. John’s L Rev 580, Survey of New York Practice, pp 645-647; emphasis added.)
*197 In his dissenting opinion,[4] Justice Presiding J. Irwin Shapiro gave his full support to the theory that there should be an allocation of legal expenses to the carrier in proportion to the total benefit realized from the third-party action, including both reimbursement of compensation benefits already paid to the employee and relief from future compensation liability. He articulated (supra, p 247) what he considered to be “the strongest argument in favor of an apportionment based on the lien plus the estimated potential liability of the carrier; to wit, that the employee’s recovery, which takes the place of his compensation award, should not be diluted by the extra expense of legal fees. If the plaintiff had failed to bring a third-party action, but instead had simply continued collecting his weekly compensation check, he could not be required to pay attorney’s fees in order to receive that money. The Legislature therefore could not have intended that where an employee effects a recovery in a third-party action which essentially replaces his right to collect weekly benefits, that the employee should pay attorney’s fees on the recovered amount. Rather, the employee should have the right to that amount without paying attorney’s fees, insofar as the recovery does not exceed the benefits paid to the employee to date plus the estimated future liability of the carrier. To hold otherwise would mean that the employee’s statutorily guaranteed compensation is reduced in the amount of the fees he is required to pay to effect his recovery.”
*198 Further pointing out that most other States faced with the same issue have resolved it by charging the insurer with the benefit of its release from future liability (citing cases and statutes discussed in Workmen’s Compensation — Tort Suit Expenses, Ann., 74 ALR3d 854, § 8, pp 886-893, and 2A Larson, Workmen’s Compensation Law, § 74.32, n 56), Justice Presiding Shapiro capsulated the reasons in support of the total benefit theory (pp 249-250): “(1) if the insurer need pay fees only on the lien, it has an incentive to delay the payment of compensation to the employee; public policy should not encourage delay in compensation payments; (2) if the insurer need only pay fees on the lien, the injured employee has an incentive (a) to unnecessarily prolong his lawsuit against the third party, thus accumulating more compensation payments, and (b) to petition the Workers’ Compensation Board for commutation of the periodical payments into a lump-sum payment pursuant to section 25 (subd 5, par [b]), prior to settlement or judgment in the third-party action; and (3) workers’ compensation laws are remedial legislation, and therefore, borderline interpretations of the law should be resolved in favor of those whom the legislation was intended to benefit.”
More courts than not in this State that have passed upon the issue have elected to follow the conclusion reached in the Castleberry dissent, some distinguishing their cases as being excess judgment cases, and others placing prime importance on the plain language of the apportionment statute and the legislative intent behind its enactment.
In O’Connor v Lee Hy Paving Corp. (480 F Supp 716, 721-722), the District Court, in a detailed and scholarly opinion by Judge John F. Dooling, presented an exhaustive review and analysis of the facts in Castleberry, concluding, inter alia: “Castleberry’s facts deny the case much of its value as a precedent * * * The basic difficulty with Castle-berry is that the court did not have the necessary data before it. The majority saw it as a deficiency case under Section 29, subdivision 4, and its hypothetical calculation overlooked the rule that subdivision 4 cases require the carrier to bear the whole cost of recovery in the reduction of *199 its credit against its deficiency liability * * * The present case presents no subdivision 5 questions, and it is unlikely to be found to be a deficiency case. There does not appear to be any reason why in this case the allocation of fees should not conform to the relative interests of the parties in the outcome of the case.”
In O’Connor, the court, not faced with a compensation deficiency situation — the judgment was in excess of one million dollars and the present value of future benefits plus the lien amounted to approximately $160,000 — concluded that the equitable apportionment statute allows for the inclusion of future benefit payments.
In Matter of Kelly (110 Misc 2d 356, 366), another excess judgment case ($315,000 verdict and compensation benefits of $30,000 plus) which followed the total benefit theory, the Surrogate emphasized Castleberry as a deficiency case: “In holding that the contribution was limited to actual benefit derived, the court [Appellate Division, Second Department] was guided by the belief that it was dealing with a deficiency judgment case”.
Other decisions, including O’Connor, have been critical of the Castleberry majority’s unduly restrictive interpretation of the word “lien” as used in subdivision 1 of section 29 of the Workers’ Compensation Law.
From a fair reading of the statutory definition of the word “lien”, the language employed therein is both precise and unequivocal: “[The compensation carrier] shall have a lien on the proceeds of any recovery * * * after the deduction of the reasonable and necessary expenditures, including attorney’s fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case and the expenses for medical treatment paid or to be paid by it” (Workers’ Compensation Law, § 29, subd 1; emphasis added.)
As stated in Cox v Belmont Iron Works (104 Misc 2d 801, 805): “Of prime importance is the language of the statute for determining this issue. In the controlling statute subdivision 1 of section 29 of the Workers’ Compensation Law, *200 the compensation carrier is given a lien from which plaintiff’s expenses and attorneys’ fees are deducted. Significantly, the lien is comprised of total amount of compensation awarded or estimated, and for medical expenses paid or to be paid. The words of the statute do not limit the lien to amounts paid. Rather, it clearly states the lien, or the amount from which expenses are to be deducted, is to contain both the amount already paid and the unpaid portion of the award established under the compensation law. No more definitive explanation of the statute could be provided under such plain language. Again, there is no limitation that attorneys’ fees be deducted only from the amount already paid to the plaintiff.”
That case similarly involved an excess judgment, to wit: a $405,000 settlement vis-á-vis a $41,504.50 compensation lien. Yet the court, in following O’Connor, rather than Castleberry, also expressed concern (pp 805-806) with what it saw as the primary legislative intent behind the apportionment statute: “The legislative intent in drafting this statute is also prominent in the court’s decision. Fairness to the employee was an overriding concern of the Legislature in creating an obligation for the compensation carrier to share legal expenses with the plaintiff (Í975 McKinney’s Session Laws of New York, p 1551). This regard for the injured employee stems from what must be the meager compensation awards that are paid * * * The action against the nonemployee tort-feasor alleviates much of this problem. As a corollary, should not the plaintiff in such action receive as much as he can to counterbalance the deficiency that the compensation award would leave him? The court believes that fairness to the employee would so dictate. A plaintiff employee should not be required to bear an unduly heavy share of attorneys’ fees and other expenses that would substantially diminish his recovery when the compensation carrier receives a benefit from the action of not having to pay the remainder of an obligation while not contributing to the attorneys’ fees for this.”
In United States Fid. & Guar. Co. v 38 East 29 St. (111 Misc 2d 672, 674), the Supreme Court, New York County, disagreed with the majority decision in Castleberry, like *201 wise relying on “the plain language of the statute [Workers’ Compensation Law, § 29, subd 1].”
Flatly repudiating any definition of the term “lien” which would narrowly restrict it to payments already made, but rather emphasizing the very same portions of the statute heretofore highlighted, Judge Dooling expressed his view (480 F Supp 716, 722, supra) as follows: “The lien is not for compensation paid but for the total awarded or provided. The carrier’s lien, then, is an open ended lien, and is as extensive as the carrier’s liability; if the third party recovery suspends or extinguishes that liability, then that is an advantage to the carrier produced by the action, just as real as is the carrier’s claim to be reimbursed for its past compensation payments. See Nakoneczua v. I. & L. Eisenberg, 60 A.D.2d 403, 400 N.Y.S.2d 884 (3rd Dept. 1977).”
As previously noted, the decisions of O’Connor, Cox, and Matter of Kelly had in common the fact that their respective third-party recoveries exceeded the sum of the lien plus the estimated liability of the carrier extinguished by the recovery. On this basis alone, relying upon the fact pattern at hand being an excess judgment situation, this court would equally be justified in following the conclusion reached by Justice Presiding Shapiro in his dissenting opinion. Unlike the fact pattern in Matter of Joosten (103 Misc 2d 140, 140-148), in which the Supreme Court, Nassau County, felt constrained to follow the majority decision of its Appellate Division because the facts before it were more “akin” to the compensation deficiency situation faced in Castleberry than the excess recovery presented by O’Connor, the facts herein lend themselves more to the so-called total benefit concept than not. Under such circumstances, contrary to respondent’s invoking the doctrine of stare decisis, this court is not thus bound by the holding of the Appellate Division, Second Department. Indeed, the majority in Castleberry reasoned that its decision was rendered on the facts before it and that no opinion was expressed as to the proper form of apportionment in an excess recovery situation. Justice Shapiro, however, in addressing such a situation, stated (70 AD2d 228, 246, supra) as follows: “the method used by Special Term will *202 not inevitably result in an allocation of the entire legal expense to the carrier. Thus, if the employee’s recovery exceeds the sum of the lien plus the estimated liability of the carrier extinguished by the recovery, then, under the procedure employed by Special Term, the employee must pay the attorney’s fees on the excess. Here, because there was no such excess, it assessed [the compensation carrier] with the entire legal fee to the extent of canceling its lien.”
Hence, the case at bar presents the very situation suggested above by Justice Presiding Shapiro (p 246), i.e., a case where the injured employee’s third-party recovery “exceeds the sum of the lien plus the estimated liability of the carrier extinguished by the recovery”, thereby requiring an allocation of legal expenses to the plaintiff employee “on the excess”, calculated as follows:
Total Settlement .................... $312,500.00
Less Total Benefits .................. (67,167.85)
Excess on Recovery .... ’ $245,332.15
Di Meglio’s Share of Attorney’s Fees
or 78.5% x $81,915.81 .... $ 64,309.06 o _Lti.oUU.UU
A result such as indicated which still leaves a balance of over $4,000 to be recouped by the carrier (after it pays its 21.5% share of the attorney’s fees), is far from the “wipe out”, “emasculation”, or “destruction” of the compensation lien feared by the Castleberry majority. Most certainly it would be gross exaggeration to portend such a result as a threat to the integrity of the compensation scheme.
Though outweighed by the policy underpinnings supporting the total benefit concept and particularly the public policy of encouraging employees to pursue their common-law remedies, the legitimate concerns of the carrier faced with a deficiency situation could perhaps best be met, as suggested by the author of the previously quoted law review article, “if future courts, in equitably apportioning the litigation expenses, strive to maximize the residuum of the judgment.” (54 St. John’s L Rev 580, Survey of New York Practice, p 647.) Of course, a more direct approach to the problem is a legislative remedy.
*203 In any event, this court concludes that the respondent compensation carrier should contribute to the payment of attorney’s fees and expenses incurred by petitioner in proportion to the total benefit it derived from the recovery in satisfying its outstanding lien and future liability for compensation payments.
Inasmuch as the court may not now have before it the accurate figures necessary to calculate the total statutory liability of the carrier, counsel should either agree on a calculation and provide for same in the order to be settled hereon, or make such further submissions as they deem necessary.
The petition is granted.

. This figure offered by the respondent is a more reliable computation than the $20,803.95 sum suggested by petitioner since the latter figure calculates the lien only as of March 23, 1982 rather than the date of settlement.

. Based on this employee’s life expectancy of 37.2 years, petitioner computes the carrier’s future payments at $202,860 and further represents the present value, discounted at 12% to be $45,077. These figures will be applied only to aid in evaluating the differing theories of apportionment, in addition to offering concrete examples of their application. In no respect should their utilization be taken as recognition of their accuracy.

. Failure by the plaintiff to comply with the statutory notice requirements prescribed by subdivision 5 of section 29 of the Workers’ Compensation Law, automatically discharged the compensation carrier of future liability for deficiency payments (Castleberry v Hudson Val. Asphalt Corp., 70 AD2d 228, 237).

 “Id. at 238, 420 N.Y.S.2d at 917-18. Where a recovery in a third party action is less than the future obligation of the compensation carrier, the carrier must pay the employee any deficiency * * * The carrier in effect shoulders the total costs of attorneys’ fees in such a case, since what he does not pay in the apportionment of attorneys’ fees will ultimately be made up in deficiency payments. See id., Curtin v. City of New York, 287 N.Y. 338, 341-44, 39 N.E.2d 903, 904-06 (1942); Kussack v. Ring Constr. Corp., 1 App. Div. 2d 634, 635, 153 N.Y.S.2d 646, 647 (3d Dep’t 1956), affd 4 N.Y.2d 1011, 177 N.Y.S.2d 522 (1958). ***

 “See note 307, supra * * *

 “Viewed in conjunction with the statutory lien afforded the carrier, see N.Y. work. comp, law § 29(1) (McKinney Supp. 1979-1980), the purpose of encouraging an injured employee to pursue his common-law remedy against a third-party tortfeasor is to keep the costs of coverage within practical limits, thus insuring the continued viability of the compensation system. See Granger v. Urda, 44 N.Y.2d 91, 97, 375 N.E.2d 380, 382, 404 N.Y.S.2d 319, 321 (1978); Becker v. Huss Co., 43 N.Y.2d 527, 537-38, 373 N.E.2d 1205, 1207, 402 N.Y.S.2d 980, 982-83 (1973); Curtin v. City of New York, 287 N.Y. 338, 342-43, 39 N.E.2d 903, 905 (1942). An additional, more fundamental consideration, is to assure the protection of the worker and his family through preservation of any rights he may have which are not inconsistent with the compensation system. See McCoid, The Third Person in the Compensation Picture; A Study of the Liabilities and Rights of Non-Employers, 37 Texas L. Rev. 389, 401 (1959).” (Emphasis added.)

. Justice Presiding Shapiro would have remitted the matter to Special Term for a determination of the present value of the future compensation payments.